Robert WITHAM and Patricia Witham,
Plaintiffs–Appellants,

v.

WHITING CORPORATION
and WT/HRC Corporation,
Defendants–Appellees.

No. 91–3137.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 1992.

Decided Sept. 23, 1992.

Thomas P. Valenti, David A. Novoselsky (argued), Novoselsky & Associates, Chicago, Ill., for plaintiffs-appellants.

Stephen C. Schulte (argued), Brant C. Weidner, Winston & Strawn, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and MANION, Circuit Judges, and GORDON, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

Plaintiff Robert Witham was injured when he was struck by a girder attached to a 40–ton main hoist crane manufactured by defendant Whiting Corporation.[1] Robert and his wife Patricia Witham sued Whiting under strict products liability and negligence theories. The district court dismissed the case because of the relevant statute of repose. Plaintiffs appeal, and we affirm.

---

[*] The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

[1] Whiting Corporation is now known as WT/HRC Corporation, which is also a named defendant. This opinion will use "Whiting" to refer collectively to both defendants unless the context otherwise requires.

## I.

According to plaintiffs' first amended complaint, Robert Witham, an Indiana resident, was working at Allied Structural Steel Company ("Allied") in Chicago Heights, Illinois, on January 15, 1988. On that day, the crane that is the focus of this litigation allegedly started to move despite the fact that no operator was in its cab, causing Witham to be struck by a girder. Witham suffered severe and permanent injuries as a result of the accident. The complaint stated that the crane manufactured by Whiting (an Illinois "resident," according to the complaint), was defective (among other reasons) because a "reset button" allowed the crane to operate independently from its on/off switch and because no shut-off device was placed near the "reset button."

The parties appear to agree on the relevant facts regarding the crane. In its brief for summary judgment, Whiting presented a detailed discussion of the crane and its installation in a section entitled "FACTUAL BACKGROUND." Plaintiffs did not include a "facts" section in their response brief and only added a few facts they thought pertinent. We therefore draw the following description of the crane at issue from these two briefs, noting any disagreements as necessary.

The Allied plant consists of three bays. The crane involved in this litigation is located in the middle bay. This bay was constructed in 1966, and the crane was installed in March 1967. Whiting contends that the crane was installed as part of the ongoing construction of the middle bay and points to testimony indicating the crane is integral to the operation of the bay. Plaintiffs assert that the crane was "added" to an "already-constructed" middle bay, but do not point to any evidence contradicting the fact that the crane was an integral part of the middle bay.

The crane is used to lift various items for the fabrication and moving of large steel beams for highway bridges and buildings. The middle bay is eighty feet wide and 700 feet long. The crane is "formed" by parallel girders that span the width of the bay. Two end trucks with flanged steel wheels ride on rails high on the walls of the bay and connect the bridge beams at either end to form a box-like structure. A trolley rides on another set of rails mounted on top of the bridge beams. The trolley has two hook and cable lifting devices that can be positioned anywhere in the middle bay for lifting operations.

The crane was custom-built for Allied's plant, although it was based on one of Whiting's standard designs. Because of the size and complexity of the crane, Whiting and the builders of the plant cooperated regarding the construction of the crane and the bay. Allied provided Whiting with building dimensions, clearances, and other information so that the crane could be constructed to fit the middle bay. Whiting also prepared drawings relating to the girders for the crane, the proper location for the mounting of electrical conductors that were to supply the crane with power, and the trolley assembly. The crane was thus constructed specifically to fit in Allied's middle bay. The crane was actually installed by Chicago Steel Erectors, not by Whiting. Whiting did, however, inspect the crane after its installation to verify that it was operational. Allied began operating the crane on or about March 28, 1967.

Plaintiffs' original complaint contained four counts. Count I was filed on behalf of Robert Witham and was apparently based on strict products liability. Count I alleged that Whiting manufactured, distributed and/or sold the crane involved in the accident in a condition not reasonably safe for its acknowledged and intended purposes, because of various design and manufacturing defects. Although Count II repeated much of the language of Count I, it added allegations of negligent design and manufacture of the crane, as well as negligent failure to warn users of its dangerous condition. Counts III and IV were on behalf of plaintiff Patricia Witham and claimed injuries in the nature of loss of consortium. Count III was based on strict products liability, and Count IV was based on a negligence theory.

Whiting moved to dismiss Counts I and III, the products liability counts, as untimely filed under Section 13–213 of the Illinois Code of Civil Procedure. Ill.Rev.Stat., ch. 110, § 13–213. Part (b) of that Section provides in relevant part:

[N]o product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period, and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier * * *.

Whiting's motion to dismiss included an affidavit of Whiting crane product group manager Robert V. Norby, which stated that the crane in question was shipped on or about March 24, 1967, and was upgraded as of September 1, 1971. Whiting noted that this suit was filed over seventeen years after the upgrade of the crane and over twenty-one years after its original shipment. On May 23, 1989, the district court entered the following minute order: "The defendants' motion to dismiss Counts I and III, based on the affidavit of Robert V. Norby, is not contested by the plaintiff[s], and is therefore granted."

Plaintiffs subsequently filed a first amended complaint, which added WT/HRC Corporation as a defendant. The amended complaint also had four counts, but all now sounded in negligence. Counts I and II were against Whiting Corporation; Counts III and IV were against WT/HRC Corporation. Whiting moved for summary judgment with respect to plaintiffs' amended complaint on the basis of Illinois' statute of repose for the construction of "improvements to real property," which provides as follows:

No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

Ill.Rev.Stat., ch. 110, § 13–214(b). The defendants argued in their written response that the crane was not an improvement to real property but was a product.[2] On May 28, 1991, Judge Zagel ruled in open court that there was no genuine issue of material fact and that Whiting was entitled to judgment as a matter of law. He entered a written order to that effect on May 29, 1991.

Plaintiffs filed a motion to reconsider under Rule 59 on June 6, 1991. The district court granted plaintiffs' motion to file a "corrected" motion to reconsider in order to correct typographical errors. The corrected motion to reconsider was filed on July 3, 1991. After briefing, the district court denied the motion to reconsider on August 16, 1991. Plaintiffs' notice of appeal was filed on September 12, 1991.

## II.

▇ Plaintiffs' first argument, which is based on judicial estoppel, borders on the frivolous. Plaintiffs claim that Whiting's tactics in the district court were "highly improper," because Whiting moved to dismiss the strict product liability claims under Section 13–213 and then, after succeeding, was "permitted to attack the amended pleadings under the theory that the crane was not a product at all." Plaintiffs' Br. at 7. According to the plaintiffs, Whiting succeeded in persuading the district court to accept two fatally inconsistent arguments.

"Judicial estoppel precludes parties from abandoning positions taken in earlier litigation. The principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1547 (7th Cir.1990) (citations omitted). The cases cited by

---

**2.** Plaintiffs' brief in response to defendants' summary judgment motion inexplicably argued that the crane was a product for the purposes of strict liability, even though only negligence counts remained in their amended complaint. See R. 94 at 3, 14 & 15.

plaintiffs all involve more than one suit; indeed, in *Astor* we limited judicial estoppel "to taking a position inconsistent with one underlying a *prior judgment.*" *Id.* at 1548 (emphasis added). Nevertheless, regardless of how it is labeled, it would be an error of law for a district court to allow a winning party to win twice on the basis of incompatible positions.[3] See *id.* (noting that the doctrine of judicial estoppel is intended to prevent winning on the basis of incompatible positions).

Plaintiffs' argument fails because Whiting has not won on inconsistent arguments; indeed, it has not even advanced any inconsistent arguments. In short, Whiting never contended or stated that its crane was a product when it moved to dismiss the strict liability claims of plaintiffs' original complaint. Therefore Whiting did not later inconsistently assert that the crane was not a product. Whiting's original motion to dismiss was in the nature of a Rule 12(b)(6) motion based on the applicable statute of repose. A party making such an argument does not by doing so adopt any of the factual or legal assertions of the complaint. Suppose that plaintiffs had been able to raise a genuine issue regarding the timing of the crane's installation such that the motion to dismiss based on the statute of repose was denied. Whiting in this scenario would not be precluded from later arguing that the crane was not a product for the purposes of strict liability. In any event, as explained in the next section, in Illinois a product can be considered an improvement to real property—the class of products and the class of improvements to real property are not mutually exclusive. There was nothing illegitimate about Whiting's claim in this litigation that Illinois' "improvement to real property" statute of repose applies in this case.

### III.

Plaintiffs argue that the statute of repose at Section 13–214 should not bar their claims because the crane in question is a product and not an improvement to real property. Our standard of review with regard to the district court's decision to grant defendants' motion for summary judgment is *de novo*. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 234 (7th Cir.1991). Viewing the record in plaintiffs' favor, we must decide whether there is no genuine issue of material fact and whether Whiting is entitled to judgment as a matter of law. As noted above, however, the facts are not materially in dispute in this case.

In support of their argument that the crane is not an improvement to real property, plaintiffs marshall cases in which products attached to realty were held subject to the doctrine of strict products liability.[4] These cases are singularly unpersuasive, for the simple reason that Illinois cases hold that a particular good can be both a product subject to the strict liability doctrine *and* an improvement to real property. "The short answer is that a product, under certain circumstances, *can* constitute an improvement to real property." *St. Louis v. Rockwell Graphic Systems, Inc.*, 220 Ill.App.3d 704, 708, 163 Ill.Dec. 142, 581 N.E.2d 93 (1st Dist.1991) (emphasis in original), appeal granted, 143 Ill.2d 648, 167 Ill.Dec. 410, 587 N.E.2d 1025; see also *Calumet Country Club v. Roberts Environmental Control Corp.*, 136 Ill.App.3d 610, 614, 91 Ill.Dec. 267, 483 N.E.2d 613 (1st Dist.1985) (noting that plaintiff's claim could be dismissed under either the products liability statute of repose or the improvement to real property statute of repose); *Garner v. Kinnear Manufacturing Co.*, No. 91 C 2089, 1992 WL 166924, at *1,

---

**3.** Of course, under Federal Rule of Civil Procedure 8(e)(2), parties may plead in the alternative or otherwise take inconsistent positions.

**4.** Plaintiffs cite *Trent v. Brasch Manufacturing Co.*, 132 Ill.App.3d 586, 87 Ill.Dec. 784, 477 N.E.2d 1312 (1st Dist.1985) (heating and air conditioning system subject to strict products liability); *Boddie v. Litton Unit Handling Systems*, 118 Ill.App.3d 520, 74 Ill.Dec. 112, 455

N.E.2d 142 (1st Dist.1983) (conveyor belt subject to strict products liability); *Lundy v. Whiting Corp.*, 93 Ill.App.3d 244, 48 Ill.Dec. 752, 417 N.E.2d 154 (1st Dist.1981) (crane similar to the one in this case referred to as a product); *Chicago Heights Venture v. Dynamit Nobel of America, Inc.*, 782 F.2d 723, 730 n. 8 (7th Cir.1986) (dicta citing *Trent* and *Boddie* ).

1992 U.S. Dist. LEXIS 10,322, at *3 (N.D.Ill. July 8, 1992) (rejecting argument that an object cannot be both a product and an improvement to real property at the same time). In other words, despite plaintiffs' protestations, the fact that a particular product might be deemed an improvement to real property for the purposes of Section 13–214 does not necessarily remove it from the realm of strict liability in tort.

Although the Illinois Supreme Court has not defined the phrase "improvement to real property," the term has been elucidated in numerous Illinois appellate cases as well as in this Court. The seminal case appears to be *Calumet Country Club, supra,* which defined an improvement to real property as "an addition to real property amounting to more than mere repair or replacement, and which substantially enhances the value of the property." 136 Ill.App.3d at 613, 91 Ill.Dec. 267, 483 N.E.2d 613. We cited this definition approvingly in *Hilliard v. Lummus Co.,* 834 F.2d 1352, 1354–1355 (1987), and numerous Illinois cases have applied it.[5] Despite this, plaintiffs hardly acknowledge the existence of the definition, much less try to distinguish these cases. We agree with the district court that the record establishes that the crane in question was an improvement to real property because it was more than a mere repair or replacement and it substantially enhanced the value of Allied's plant.[6]

Plaintiffs rely almost exclusively on the faulty argument that the crane cannot be an improvement to real property because it is a product, no matter what definition Illinois law gives to the term "improvement to real property." Plaintiffs' brief can charitably be read to raise the separate issue of whether Whiting's involvement in the installation of the crane and construction of the bay was so minimal that Whiting does not fall within the intended protected class of the improvement to real property statute

of repose. Plaintiffs only hint at this argument. Their reply brief states that "defendants are not in the business of providing improvements to real property. Instead they manufacture a particular model of crane to a single design for use throughout the United States. Modifications to enable the crane to fit into an existing site are kept to a minimum * * *." Reply Br. at 5–6. In addition, plaintiffs' main brief states:

> There are many "products" which ultimately become permanently attached to a building. * * * There are clocks, water heaters, and other items which are individually manufactured, placed in the "stream of commerce" by their manufacturers to compete against other, similar products in that marketplace, before they are purchased by the consumer to be "attached" to a building. They remain as "products" despite their attachment.

Plaintiffs' Br. at 26.

There may be a problem with applying the improvement to real property statute of repose to a manufacturer of a product used in the improvement who was otherwise uninvolved with the particular construction project. The Missouri Supreme Court recently concluded that:

> manufacture at the manufacturer's factory or production site of a standard product available generally to the public that is manufactured and furnished for inclusion in the improvement by the persons constructing the improvement under circumstances where the manufacturer has no substantial on-site construction activity is not within the protection of the statute.

*Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 837 (Mo.1991); see also *Herriott v. Allied–Signal, Inc.,* No. 91 C 1377, 801 F.Supp. 52, 58 (N.D.Ill.1992) ("We find the analysis [in *Blaske* ] useful and believe

---

5. See, *e.g., St. Louis, supra; Neofotistos v. Metrick Electric Co.,* 217 Ill.App.3d 506, 160 Ill.Dec. 381, 577 N.E.2d 511 (2d Dist.1991); *Kleist v. Metrick Electric Co.,* 212 Ill.App.3d 738, 156 Ill. Dec. 839, 571 N.E.2d 819 (1st Dist.1991); *Cates v. Hunter Engineering Co.,* 205 Ill.App.3d 587, 151 Ill.Dec. 133, 563 N.E.2d 1239 (3d Dist.1990).

6. The Minnesota Supreme Court has concluded that an overhead rail crane similar to the one here was an improvement to real property. *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448 (Minn.1988).

that the Illinois Supreme Court would as well."); *Baker v. Walker & Walker, Inc.,* 133 Cal.App.3d 746, 184 Cal.Rptr. 245 (1982) (manufacturer of heating and cooling units not protected by improvement to real property statute); *Sevilla v. Stearns–Roger, Inc.,* 101 Cal.App.3d 608, 161 Cal. Rptr. 700 (1980) (manufacturer of large pan used in sugar refinery plant not protected by statute). We note that Section 13–214 is titled "Construction—Design management and supervision," and the legislative history of that section indicates that its purpose is to protect architects, construction companies, engineers, and the like. See 81st Ill.Gen.Assem., House Proceedings, May 25, 1979, at 34. Finally, our decision in *Lummus* emphasized that the defendant "planned, supervised, and managed the modernization of the * * * plant," and distinguished *Baker* and *Sevilla* on that basis. 834 F.2d at 1357.

The Appellate Court of Illinois in *St. Louis* rejected an argument that a manufacturer does not fall within the class of defendants intended to be protected by Section 13–214(b), but noted that the plaintiff's complaint specifically alleged that the manufacturer had "installed" the product in question. *St. Louis,* 220 Ill.App.3d at 710, 163 Ill.Dec. 142, 581 N.E.2d 93. Because appeal has been granted in that case, the Illinois Supreme Court may soon provide guidance on the question of when a manufacturer of a product may be entitled to protection under Section 13–214(b).

Here plaintiffs apparently attempt to equate the crane with a clock or water heater when they describe it as a "mass-produced product." Plaintiffs' Br. at 29. But this description is specious. Whiting did not place the crane into the "stream of commerce." It did not simply pluck the crane from its inventory and ship it to Allied. Instead, it specially manufactured the crane for Allied based on information Allied provided about its plant. We agree with the Pennsylvania Supreme Court's resolution of a similar case:

> It is abundantly clear from the record that Columbus did more than supply a standard piece of equipment, indistinguishable from any other it mass-pro-

duced, that by chance became affixed to the University's property. Using specifications and a general layout provided by Rust Engineering, Columbus designed a coal delivery system to be integrated into the construction of the new power plant that was uniquely suited to that site. On the facts in this record, there is no question that Columbus was engaged in the design of an improvement to real property and thus was entitled to the benefit of the statute of repose.

*McCormick v. Columbus Conveyer Co.,* 522 Pa. 520, 564 A.2d 907, 910–911 (Pa. 1989). No matter how the Illinois Supreme Court might decide *St. Louis,* we are persuaded that Whiting is entitled to the protection of the statute of repose because it worked with the builders of the bay to create a crane specifically intended to fit at Allied's plant.

For the foregoing reasons, summary judgment is affirmed.