OGDEN MARTIN SYSTEMS
OF INDIANAPOLIS, INC.,
Plaintiff–Appellant,

v.

WHITING CORP., Defendant–Appellee.

No. 98–2120.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1999.

Decided May 21, 1999.

524

Ronald H. Balson (argued), Kadish & Associates, Chicago, IL, for Plaintiff–Appellant.

Stephen C. Schulte, Stephen V. D'Amore (argued), Winston & Strawn, Chicago, IL, for Defendant–Appellee.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Ogden Martin Systems of Indianapolis, Inc., an Indiana corporation, filed suit in federal district court against Whiting Corporation, a Delaware corporation with its principal place of business in Illinois, properly alleging diversity jurisdiction and claiming that Whiting breached a contract to supply two overhead cranes. Whiting moved to dismiss based on its belief that the contract was a transaction involving the sale of goods and, therefore, the suit was time barred because Ogden Martin did not file it within the applicable statute of limitations under Indiana's Uniform Commercial Code ("UCC"). The district court granted this motion and dismissed Ogden Martin's suit. Because we agree that Ogden Martin's suit was not filed within the applicable statute of limitations, we affirm.

## I. History

On September 15, 1986, Ogden Martin and Whiting entered into a contract in which Whiting agreed to construct, deliver, and assemble two solid waste handling cranes and operating systems. The total contract price was $924,405. According to the terms of the contract, Ogden Martin owed Whiting $915,100 for two "13.5 Ton Solid Waste Refuse Cranes" with various options and $9,305 for four two-day "Service Engineer Site Visits" conducted during the first year of the contract. Ogden Martin alleges that Whiting constructed the cranes as a permanent improvement to its real property. In contrast, Whiting contends that the contract was a transaction in goods and, thus, governed by Indiana's UCC.

The parties' contract specified that Whiting would deliver the equipment and materials identified in the contract to Ogden Martin's plant by April 30, 1997. According to Ogden Martin's complaint, Whiting completed delivery and installation of the two overhead cranes by August 1988. On July 2, 1991, an accident at Ogden Martin's plant revealed material and latent defects in the construction of the cranes. Inspection of the cranes allegedly disclosed that Whiting failed to comply with construction specifications. This failure resulted in substantial damage to Ogden Martin's plant, necessitating massive reconstruction. Ogden Martin admits it learned of Whiting's deficient performance at the time of the accident. In 1993, Ogden Martin discovered additional damage to the girders, and a study conducted in 1996 revealed that it was necessary to replace the girders.

Ogden Martin filed suit in federal district court on June 27, 1997, alleging that

Whiting breached the parties' contract. Whiting filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that the four year statute of limitations for transactions involving the sale of goods as set forth in Indiana's UCC barred Ogden Martin's suit. Ogden Martin opposed this motion based on its twofold contention that (1) the construction of the cranes was an improvement to real property and not a transaction in goods and (2) Whiting should be judicially estopped from asserting that the contract was a transaction in goods because of a supposedly contradictory position Whiting had taken in a previous lawsuit.

The district court rejected Ogden Martin's estoppel argument and concluded that the contract at issue did, in fact, constitute a transaction in goods under the UCC. Based on this conclusion, the court applied the UCC's four year statute of limitations for suits arising from such transactions. The court granted Whiting's motion to dismiss because Ogden Martin's cause of action for breach of contract accrued no later than July 2, 1991, when Ogden Martin did or should have discovered the alleged breaches, and Ogden Martin did not commence its suit until June 27, 1997—nearly six years later and well outside the four year statute of limitations period.

## II. Analysis

Ogden Martin argues on appeal that the district court's decision granting Whiting's motion to dismiss warrants reversal on two grounds. First, Ogden Martin contends that Whiting should have been judicially estopped from asserting that the contract between the parties constituted a transaction involving the sale of goods. Second, Ogden Martin submits that the district court erred in concluding that the contract constituted a transaction involving the sale of goods. Ogden Martin claims that the cause of action resulted from an injury sustained as a result of an improvement to real property and, therefore, the suit was timely filed under the six year statute of limitations applicable to this type of action.

## A. Standard of Review

In the proceedings before the district court, Whiting moved to dismiss Ogden Martin's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Such a motion challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. See Fed.R.Civ.P. 12(b)(6). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We review a district court's grant of a motion pursuant to Rule 12(b)(6) de novo, accepting all of the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. See Hi–Lite Prods. Co. v. American Home Prods. Corp., 11 F.3d 1402, 1405 (7th Cir.1993).

## B. Judicial Estoppel

Central to the success of Whiting's motion to dismiss before the district court was Whiting's ability to advance the argument that the contract between Ogden Martin and Whiting was a transaction in goods and, therefore, subject to the UCC's four year statute of limitations for causes of action arising from such transactions. Ogden Martin contends that the doctrine of judicial estoppel should have barred Whiting from asserting this position in the present case.

The doctrine of judicial estoppel is an equitable concept "provid[ing] that a party who prevails on one ground in a lawsuit cannot turn around and in another lawsuit repudiate the ground." McNamara v. City of Chicago, 138 F.3d 1219, 1225 (7th Cir.), cert. denied, — U.S. —, 119 S.Ct. 444, 142 L.Ed.2d 398 (1998); see also Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1427 (7th Cir.1993) ("A liti-

gant is forbidden to obtain a victory on one ground and then repudiate that ground in a different case in order to win a second victory."). Judicial estoppel serves "to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.1992); *see also Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir.1998) ("[T]he purpose of the doctrine ... is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant."). Although there is no precise formula guiding the application of this doctrine, we have identified certain prerequisites to its application: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position. *See Levinson*, 969 F.2d at 264–65.[1]

Ogden Martin bases its judicial estoppel argument on its belief that Whiting's characterization of the contract in the present case as a contract involving a transaction in goods is inconsistent with the position taken by Whiting in a prior unrelated lawsuit. *See Witham v. Whiting Corp.*, 975 F.2d 1342 (7th Cir.1992). In *Witham*, a plaintiff was injured at the plant at which he was employed, Allied Structural Steel Company ("Allied"), when he was struck by a girder attached to a crane Whiting manufactured. An important factual distinction between *Witham* and the present case is that the contract in *Witham* did not require Whiting to install the crane at

Allied's plant. Rather, Allied contracted with Chicago Steel Erectors, a third party, for the installation of the crane it purchased from Whiting. The plaintiff filed suit against Whiting, relying on various negligence theories. Whiting moved for summary judgment, arguing that the plaintiff's suit was not filed within the Illinois ten year statute of repose for actions based on contract or tort arising from improvements to real property. The district court granted Whiting's motion for summary judgment, and we affirmed.

■ Ogden Martin submits that Whiting's argument in *Witham* precludes Whiting from arguing that the contract in the present case for the manufacture and installation of two overhead cranes was a contract involving a transaction in goods. We disagree. "[T]his court has generally considered the applicability of the doctrine [of judicial estoppel] only when there are successive litigations arising from the same factual circumstance." *Ezekiel v. Michel*, 66 F.3d 894, 904 (7th Cir.1995). This case is not a successive suit. And, while judicial estoppel is not strictly limited to such suits, *see Continental Illinois Corp. v. Commissioner*, 998 F.2d 513, 518 (7th Cir.1993), Ogden Martin makes no showing that Whiting's position in the present case is clearly inconsistent with its position in *Witham*.

The sole issue before the court in *Witham* was whether the plaintiff's personal injury action was barred by Illinois' ten year statute of repose governing injuries arising from improvements to real property. In *Witham*, Whiting argued that at the time the plaintiff was injured—more

---

1. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), established that federal courts sitting in diversity are generally bound to apply state substantive law and federal procedural law. Although this is a diversity case, we believe federal, rather than state, law should dictate the applicability of the principle of judicial estoppel and, indeed, we have relied on federal law in examining this issue in diversity cases in the past. *See Chaveriat*, 11 F.3d at 1427–29. As explained by the Sixth Circuit, "[j]udicial estoppel is a rule designed to protect the integrity of judicial institutions ... and, consequently, federal courts must be free to develop principles that most adequately serve their institutional interests." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n. 4 (6th Cir.1982); *see also Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358 n. 2 (3d Cir.1996) ("A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose.").

than twenty years after the crane had been installed by Chicago Steel Erectors—the crane had become an improvement to real property. *See, e.g., Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 267 n. 4 (7th Cir.1994) (recognizing that "a 'product' under appropriate circumstances can constitute an improvement to real property"). Whiting's position in the present case centers on the argument that the contract between Whiting and Ogden Martin, which is the basis for the suit, predominantly involved a transaction in goods (not unlike the contract between Whiting and Allied in *Witham*) and that Ogden Martin failed to file suit within the UCC's statute of limitations governing such transactions. The simple fact that the present suit requires a determination of whether a contract between a buyer and a seller involved a transaction in goods and the court in *Witham* was required to make a legal determination regarding the nature of a crane twenty years after its installation (largely without reference to the contractual relationship between Whiting and Allied) provides a sufficient ground to distinguish the positions taken by Whiting in these cases.

■ While the doctrine of judicial estoppel serves the important purpose of preventing manipulative parties from prevailing twice on opposite theories in certain circumstances, it may not be used to hamstring a litigant from advancing a particular position when this position is not clearly inconsistent with a prior position or when the facts of the two cases at issue are not identical. Accordingly, we conclude that Whiting is not estopped from arguing that the contract for the manufacture and installation of the two overhead cranes presently at issue constitutes a transaction involving the sale of goods.

### C. The Applicable Statute of Limitations

■ We now turn to the issue of whether the applicable statute of limitations barred Ogden Martin's suit. "Statutes of limitations are generally considered part of the forum state's substantive law which federal courts must apply when sitting in diversity." *Evans v. Lederle Labs.*, 167 F.3d 1106, 1111–12 (7th Cir.1999) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 109–110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)); *see also Malone v. Bankhead Enters., Inc.*, 125 F.3d 535, 537 (7th Cir.1997).

■ Ogden Martin contends that the district court erred in concluding that the statute of limitations for transactions in goods found in Indiana's UCC applied to its contract with Whiting. Because Indiana's UCC "applies to transactions in goods," Ind.Code § 26-1-2-102, Ogden Martin argues that the two overhead cranes supplied and installed by Whiting should not be characterized as "goods," as defined by Indiana's UCC. Rather, Ogden Martin submits that the installation of the two overhead cranes at its plant constituted an improvement to real property and, therefore, the six year statute of limitations for actions arising from such improvements should have been applied by the district court.

It is worth noting at this point that Ogden Martin faces an insurmountable battle in attempting to convince us that its contract with Whiting was not a transaction in goods. Although Ogden Martin characterizes the contract between the parties as a "construction agreement" for improvements to its property and not as a transaction in goods, this argument is belied by the very terms of the contract Ogden Martin appended to its complaint as an exhibit. The "Terms and Conditions" section of the contract repeatedly identifies the subject matter of the transaction—the two overhead cranes—as "goods."

Rather than focus on the "Terms and Conditions" section of the contract, Ogden Martin directs the court's attention to the "Purchase Order" section of the contract, which does not explicitly refer to the two overhead cranes as "goods." Ogden Martin's attempt to distance itself from the "Terms and Conditions" section of the con-

tract by claiming that it is simply a pre-printed form, while understandable, is of no avail. Neither the description of the subject matter of the contract, nor the contract taken as a whole are ambiguous. To accept Ogden Martin's argument on this point would be to render the "Terms and Conditions" section of the contract superfluous without any basis for doing so.

■ The inconsistency between the complaint and the actual terms of the contract substantially undermines Ogden Martin's argument that the parties' contract was not a transaction in goods under Indiana's UCC. As we have explained: "[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir.1991) (quoting *Foshee v. Daoust Constr. Co.*, 185 F.2d 23, 25 (7th Cir.1950)); *see also ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."). To this end, it is indeed true that "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *In re Wade*, 969 F.2d 241, 249 (7th Cir.1992).

Even if we were to look past this inconsistency, we would still conclude that the contract constituted a transaction in goods and was, therefore, governed by Indiana's UCC. The UCC defines the term "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." Ind.Code § 26–1–2–105; *see also id.* cmt. 1 (emphasizing that "[t]he definition of goods is based on the concept of movability"). Identification occurs "when the contract is made if it is for the sale of goods already existing and identified" or "if the contract is for the sale of future goods, ... when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers." Ind.Code § 26–1–2–501; *see also First Nat'l Bank v. Smoker*, 153 Ind.App. 71, 286 N.E.2d 203, 212 (1972) ("Identification refers to when the goods are still in the possession of the seller."). Our examination of whether the two overhead cranes in the present case should be characterized as "goods" is further guided by the proviso contained in Indiana's UCC specifying that the Code is to be "liberally construed and applied to promote its underlying purposes and policies." Ind.Code § 26–1–1–102(1).

As the district court recognized, the two overhead cranes ultimately installed at Ogden Martin's plant were clearly movable at the time of identification to the contract for sale, notwithstanding the relatively large size of these cranes. Indeed, Ogden Martin's complaint supports this conclusion. It states: "Whiting delivered and installed two thirteen ton traveling cranes and an operator station." The "Purchase Order" section of the contract similarly contemplates that Whiting was to deliver the two overhead cranes to Ogden Martin. The suggestion that an object such as a crane is capable of being delivered and yet incapable of being moved approaches an oxymoron.

However, the conclusion that the two overhead cranes are movable does not end our analysis. It cannot be denied that the contract presently at issue contemplates more than the mere delivery of two overhead cranes to Ogden Martin. According to Ogden Martin, the contract also required the provision of certain services to be performed by Whiting in conjunction with the delivery of these cranes. Specifically, Ogden Martin claims that the contract obliged Whiting to construct the cranes in accordance with Ogden Martin's specifications and to install permanently these cranes at Ogden Martin's plant.

■ The Supreme Court of Indiana has characterized contracts involving both

the provision of goods and the performance of services as "mixed" contracts that require courts to determine whether such contracts fall within the UCC, or fall outside of the code and are thus governed by the common law. *Insul–Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 553–54 (Ind.1993). In *Insul–Mark*, the Supreme Court of Indiana held that the "predominant thrust test" should be used in making this determination. *Id.* at 554. "Under the predominant thrust test, the applicability of the U.C.C. to a mixed transaction is determined by considering whether the transaction's 'predominant factor, [its] thrust, [its] purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved. . . .'" *Id.* (quoting *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir.1974)).

As the party seeking the benefit of the UCC, Whiting bears the burden of establishing that the predominant thrust of the transaction was for goods and only incidentally for services. *Id.* at 555. *Insul–Mark* identified three factors to consider in making this determination. An examination of each of these factors demonstrates that the predominant thrust of the contract entered into by Ogden Martin and Whiting was a contract for the provision of goods.

Courts are first instructed to look "to the language of the contract . . . in light of the situation of the parties and the surrounding circumstances." *Id.* In this regard, "one looks to the terms describing the performance required of the parties, and the words used to describe the relationship between the parties." *Id.* The contract presently at issue repeatedly refers to the two overhead cranes as "goods." Moreover, the relationship between Ogden Martin and Whiting is consistently cast in the contract as one of "Purchaser" and "Seller." It is also worth noting that several paragraphs found within the "Terms and Conditions" section of the contract either track or modify various

sections of Indiana's UCC, including the battle of forms (section 2–207), the perfect tender rule (section 2–601), acceptance and rejection of goods (sections 2–603, 2–604, and 2–606), and warranties (sections 2–313, 2–314, and 2–315). The "Purchase Order" section of the contract also excludes "Warranties of Merchantability [and] Fitness for a Particular Provision." The exclusion of these warranties clearly addresses sections 2–314 and 2–315 of the UCC, which provide that warranties of merchantability and fitness for a particular purpose are implied in contracts for the sale of goods unless excluded or modified, and section 2–316, which addresses the exclusion or modification of warranties. The characterization of the parties as "Purchaser" and "Seller" and the extent to which the parties relied on UCC provisions to form the foundation of so many of the paragraphs included in the contract provide a clear indication that the parties sought to insure or at least assumed that the contract would be governed by the UCC.

Once the language of the contract has been examined, *Insul–Mark* requires courts to look "[b]eyond the contractual terms themselves . . . to the circumstances of the parties, and the primary reason they entered into the contract." *Insul–Mark*, 612 N.E.2d at 555. In doing so, it is necessary to consider "the final product the purchaser bargained to receive, and whether it may be described as a good or a service." *Id.* Despite Ogden Martin's attempts to portray Whiting as "a subcontractor, responsible for building a portion of [Ogden Martin's] plant," Ogden Martin's main purpose for entering into the agreement was for the purchase of the two overhead cranes from Whiting. Whiting's performance of preliminary preparations for the installment of the cranes and the actual installation of the cranes at Ogden Martin's facility was largely incidental to the purchase of these cranes. *See, e.g., Baker v. Compton*, 455 N.E.2d 382, 387 (Ind.Ct.App.1983) (concluding that contract for the sale of furnaces, air condition-

ers, and other equipment was "primarily for the sale of equipment and the installation of services, though not unimportant, were incidental to that sale"). Even Ogden Martin's complaint lends credence to this conclusion. It states that "Ogden Martin was induced to purchase two solid waste handling cranes and operating systems from Whiting."

The conclusion that the predominant thrust of the contract was for the provision of goods is further supported by consideration of the third and final factor identified in *Insul–Mark.* This third factor calls for an examination of "the costs involved for the goods and services, and whether the purchaser was charged only for a good, or a price based on both goods and services. If the cost of the goods is but a small portion of the overall contract price, such [a] fact would increase the likelihood that the services portion predominates." 612 N.E.2d at 555. The contract between Ogden Martin and Whiting specifies that all but $9,305 of the total contract price of $924,405 was paid for the two "13.5 Ton Solid Waste Refuse Cranes" and certain other options. Although Ogden Martin argues that the contract does not specify what portion of the price is for labor and what portion is for the actual cranes, the "Terms of Payment" section of the contract does shed light on this question. According to the "Terms of Payment" section, ninety percent of the contract price (albeit in increments) is due prior to and upon receipt of the final shipment of the cranes with the remaining ten percent of the contract price due ninety days after acceptance of the cranes. Noticeably, the "Terms of Payment" section does not provide for any amount due upon the completion of the installation (or construction) of the cranes at Ogden Martin's plant. This point defeats any argument that it would be reasonable to infer that a greater portion of the contract price was due for services rather than for goods.

Given the facts of this case, we conclude that the contract between Ogden Martin and Whiting for the delivery and installation of the two overhead cranes constituted a transaction in goods governed by Indiana's UCC. Having reached this conclusion, we now consider whether Ogden Martin filed suit within the applicable statute of limitations.

■■■ The UCC's statute of limitations provides that "[a]n action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued." Ind.Code § 26–1–2–725(1). Under the UCC:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

Ind.Code § 26–1–2–725(2). Thus, as summarized by the district court, "the limitations period begins to run either when tender of delivery is made or, if a warranty extends to future performance, when the breach is or should have been discovered."

According to Ogden Martin's complaint, delivery of the cranes and other materials occurred in spring of 1987, and the installation of the cranes was completed by August 1988. Ogden Martin contends that it did not learn of the alleged "defects in construction" until it conducted an inspection of the cranes following an accident on July 2, 1991. It was at this time that Ogden Martin did or should have discovered the alleged breaches that formed the basis of its complaint. However, Ogden Martin's complaint was not filed until June 27, 1997, well outside the applicable four year statute of limitations. For this reason, Ogden Martin's complaint was properly dismissed by the district court.

### III.  Conclusion

In sum, we agree with the district court that the contract between Ogden Martin and Whiting was for a transaction in goods and, therefore, governed by Indiana's UCC. Because Ogden Martin failed to file suit within the applicable statute of limitations, the judgment of the district court dismissing Ogden Martin's complaint is

AFFIRMED.