# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-2644

WILLIAM L. CENTERS,

*Plaintiff-Appellant,*

*v.*

CENTENNIAL MORTGAGE, INC., and
MATTHEW T. KANE,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 04 C 153—**Allen Sharp**, *Judge.*

---

ARGUED JANUARY 20, 2004—DECIDED FEBRUARY 22, 2005

---

Before FLAUM, *Chief Judge*, and BAUER and KANNE,
*Circuit Judges.*

FLAUM, *Chief Judge.* Plaintiff-appellant William Centers
is the former sole shareholder of Centennial Mortgage, Inc.
("Centennial"). Centers sold all of his shares in the corpora-
tion to Matthew Kane in exchange for most of Centennial's
assets. Plaintiff filed this action against Kane and Centen-
nial, seeking a declaration defining the scope of the assets
he received in the deal. He also requested a mandatory
injunction ordering Centennial and Kane to sue the United
States Department of Housing and Urban Development
("HUD" or "the Department") on his behalf, a remedy
Centers contends he is entitled to under the terms of the

sale. The district court granted defendants' motion to dismiss for failure to state a claim, and Centers appealed. For the reasons stated herein, we affirm in part, reverse in part, and remand for further proceedings.

## I.  Background

We summarize the facts as pleaded by Centers. Centennial specializes in issuing mortgages insured by HUD. On January 18, 1989, Centennial, then owned by Centers, signed a building loan agreement with Miller Beach Limited Partnership ("Miller Beach") and its trustee. The agreement provided that Centennial would lend Miller Beach $2,270,000.00 to fund construction work converting a motel into a residential care facility. Centennial's loan was secured by a mortgage on the property. HUD agreed that it would insure the mortgage, provided that the general contractor hired to renovate the building sign an irrevocable letter of credit for the benefit of Centennial in the amount of $237,760.20. Centennial would be permitted to draw down on these funds if the general contractor defaulted on its construction obligations. The general contractor was unable to issue the letter of credit, however, and David Blumenfeld, the president of Miller Beach, personally supplied the financing. HUD found this arrangement acceptable and insured the mortgage.

Miller Beach later defaulted on the loan, and Centennial filed a claim for insurance payments with HUD. At HUD's direction, Centennial withdrew $212,105.26 from the letter of credit. HUD paid Centennial's claim less this amount, and Centennial assigned ownership of the mortgage to HUD.

Blumenfeld then sued Centennial for breach of contract and conversion. Although it is not entirely clear from the pleadings, it appears that Blumenfeld argued that Centennial had no right to draw down on the letter of credit

because the general contractor had fulfilled its construction obligations. The case went to trial, a jury found in favor of Blumenfeld, and the judgment was affirmed on appeal. *See Centennial Mortgage Inc. v. Blumenfeld*, 745 N.E.2d 268 (Ind. Ct. App. 2001). After interest and costs, Centennial paid Blumenfeld a total of $202,730.23. Centennial then turned to HUD and asked it to pay the balance of the insurance proceeds the corporation would have received absent the letter of credit. HUD refused.

In the meantime, the ownership of Centennial was in transition. On August 1, 2000, Centers executed a stock purchase agreement whereby he sold all of his stock in Centennial to Kane. That same day Centers and Kane also signed an assignment agreement providing that, in exchange for the stock, Centers would receive virtually all of the assets of the corporation. The transferred assets explicitly included "all chose[s] in action," defined in the agreement as "all rights recoverable by lawsuit by [Centennial] pertaining to matters arising prior to Closing." (J.A. 27.) Both the stock purchase agreement and the assignment required the parties to take the steps necessary to consummate the transaction.

Centers contends that HUD breached its contract to insure Centennial by refusing to supplement its initial insurance payment. He asserts that the right to recover against HUD because of this wrong is a "chose in action" that arose prior to the close of the transaction. According to plaintiff, the assignment agreement transfers to him all choses in action arising prior to the closing date, including the right to sue HUD. He believes, however, that only a party in privity with the federal government may sue it for breach of contract. A suit filed by Centennial on Centers's behalf would satisfy this procedural requirement, plaintiff argues. He contends that because Centennial and Kane are required to do whatever is necessary to consummate the transaction, defendants must sue HUD on Centers's behalf

so that he might vindicate his rights under the chose in action. Defendants declined Centers's request that they sue the Department.

Centers then filed this action, seeking a declaratory judgment that his contemplated suit against HUD was a "chose in action" transferred to him by the assignment agreement, that the stock purchase and assignment agreements obligated defendants to sue on his behalf, and that he had the right to control Centennial's suit against HUD. Plaintiff also requested a mandatory injunction ordering Centennial and Kane to sue the Department. Centers's complaint attached as exhibits the stock purchase agreement, its exhibits, and the assignment agreement.

Centennial and Kane moved to dismiss the action for failure to state a claim. The district court granted the motion, holding that the Assignment of Claims Act, 31 U.S.C. § 3727, barred the transfer of the chose in action, and that the language of the contracts could not support the relief requested by plaintiff. Centers appeals.

## II.  Discussion

We review de novo the district court's dismissal for failure to state a claim. *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004). Dismissal is proper under Rule 12(b)(6) only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When ruling on a motion to dismiss, the court generally should consider only the allegations of the complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Because the stock purchase agreement and assignment agreement are attached as exhibits to Centers's complaint, we may consider their terms in ruling on the

motion to dismiss. And while we accept well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff, *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999), to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls. *See Rosenblum*, 299 F.3d at 661 ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.") (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)). "[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Ogden Martin*, 179 F.3d at 529 (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992)).

This appeal focuses on whether Centers's complaint adequately alleges that: (i) the assignment agreement transferred to him the right to sue HUD; and (ii) the assignment agreement and stock purchase agreement obligate defendants to sue the Department on Centers's behalf. Before reaching these issues, however, we address whether defendants have waived on appeal an argument made below—that the Assignment of Claims Act, 31 U.S.C. § 3727, bars the transfer of the chose in action from Centennial to Centers.

## A. Waiver of § 3727 as Barring the Transfer

Centers's appellate brief argues at length that the Act does not apply to this case. Rather than attempting to rebut plaintiff's contentions, defendants recast the opinion below as having held that § 3727 does not bar the transfer. Centennial and Kane claim that the district court merely recognized that contracts must be read to avoid conflict with governing law, *e.g.*, *Indiana-American Water Co. v. Town of*

*Seelyville*, 698 N.E.2d 1255, 1259 (Ind. Ct. App. 1998), and that the court below interpreted the stock purchase agreement and assignment agreement so as to conform with the Act. Defendants' recharacterization of the district court's opinion is untenable; the court below clearly held that § 3727 barred the transfer. Moreover, defendants' argument makes sense only if a plausible interpretation of either agreement conflicts with the Act. Centennial and Kane do not contend, however, that there is a possible conflict. To the contrary, they cite authority for the proposition that the statute does not apply to the facts of this case. Defendants therefore have waived this argument, and we do not address whether the Act provides a defense to plaintiff's claim.[1] We turn to the issues actually contested on appeal.

## B. Transfer to Centers of the Right to Sue HUD

The parties agree that the interpretation of both contracts is governed by Indiana law. Indiana courts hold that "[t]he primary and overriding purpose of contract law is to ascertain and give effect to the intentions of the parties." *Indiana-American Water Co.*, 698 N.E.2d at 1259. "In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. The meaning of a contract is to be determined from an examination of all of its provisions, not

---

[1] While conceding that the Act does not apply to this case, defendants nonetheless imply that Centers is bound by the district court's ruling because he argued below that § 3727 barred the transfer. We disagree. Some of plaintiff's counsel's statements during oral argument before the district court, taken out of context, contradict his contentions on appeal. His comments later in that hearing clarify that he did not admit that the Act applies. Accordingly, plaintiff is not bound by the ruling below.

from a consideration of individual words, phrases or paragraphs read alone." *Id.* (internal citations omitted).

Centers contends that the assignment agreement transferred to him the right to sue HUD for its failure to supplement its initial insurance payment to Centennial. The assignment agreement provides:

> [Centennial] hereby sells, transfers, assigns and conveys to Centers all of [Centennial's] rights, title and interest in and to all of the assets and properties of [Centennial] (subject to liabilities of [Centennial] related to those assets), except for (i) the office equipment, furniture and supplies, (ii) the licenses, permits and authorizations (including those issued by the Federal Housing Administration), which are necessary to sustain [Centennial] in the ordinary course of its business of originating loans, and (iii) all pending loan commitments other than the Pending Loans [sic] Commitments (as defined in the Purchase Agreement). The assets and properties being conveyed by [Centennial] to Centers hereunder . . . shall include . . . all chose in action (all rights recoverable by lawsuit by [Centennial] pertaining to matters arising prior to Closing).[2]

(J.A. 27.)

On its face, this sweeping language admits only three exceptions: (i) office equipment, furniture and supplies; (ii) licenses, permits and authorizations; and (iii) certain pending loan commitments. Defendants do not argue

---

[2] A "chose in action" is defined similarly under Indiana law as "a personal right not reduced into possession but recoverable by suit in law. It is a property right characterized as personalty. The term in its broadest sense encompasses all rights of action whether they sound in contract or tort." *Neffle v. Neffle*, 483 N.E.2d 767, 771 (Ind. App. 2d Dist. 1985) (internal citations omitted).

that a chose in action against HUD falls into one of these categories. They point out, rather, that the agreements fail to identify specifically an action against HUD as an asset transferred to Centers. Centennial and Kane also contend that ¶ 8(e) of the stock purchase agreement limits the choses in action assigned to plaintiff. Paragraph 8(e) states:

> [Centers] hereby represents and warrants to [Kane] that . . . [e]xcept as disclosed on **Exhibit B**, there are no actions or proceedings pending or, to the knowledge of [Centers], threatened against, relating to or affecting [Centers or Centennial], and . . . there are no facts or circumstances known to [Centers] that could reasonably be expected to give rise to any such action or proceeding.

(*Id.* at 18.) Exhibit B identifies four pending lawsuits; Centennial is named as a defendant in two, as a counterdefendant in one, and appears to be a third-party defendant in another. The exhibit does not mention the possibility of a suit against HUD. Centennial and Kane argue that ¶ 8(e) restricts the transferred choses in action to those mentioned in Exhibit B, and that the parties decided not to list an action against HUD in that exhibit because they intended that Centers not receive the right to sue the Department.

We believe that defendants have it backwards. First, the assignment agreement transfers *all* of Centennial's assets, including *all* choses in action, to Centers, subject to three narrow exceptions. Thus, unless defendants can point to express language in the agreements carving out a chose in action against HUD, that asset passed to Centers.

Second, neither the language nor the context of ¶ 8(e) suggest that it limits the assets transferred to Centers. The text of that paragraph does not purport to narrow the class of assets assigned to Centers, nor does it explicitly mention "chose[s] in action." Moreover, Centennial's potential

liability in all four suits listed in Exhibit B reveals that defendants' interpretation is untenable. Defendants' argument that only the listed suits were transferred leads to the incongruous result that the "assets" defined as "rights recoverable by lawsuit" include only actions in which Centennial stands to lose money. Defendants' reading of ¶ 8(e) also renders language elsewhere in the agreements superfluous. *See Indiana-American Water Co.*, 698 N.E.2d at 1259 (courts should avoid interpretation of contract that renders any of its terms meaningless). If that paragraph defined the choses in action transferred to Centers, then there would be no need to state separately that Centennial was assigning to Centers "all chose[s] in action." Finally, the context of ¶ 8(e) undermines defendants' interpretation. That provision appears in the stock purchase agreement. If it were intended to limit the transferred assets, we would expect to find it in the assignment agreement, the document that conveys the assets to plaintiff. Instead, we locate ¶ 8(e) in a list of representations and warranties from Centers to Kane that, for example, the corporation is duly organized, Centers has the authority to sell Centennial, and plaintiff lawfully owns its outstanding shares. This list of promises focusing on the corporation being sold to Kane seems an odd place for language limiting the assets being given to Centers in exchange. Centers's complaint therefore adequately pleads that the assignment agreement transferred to him a chose in action against HUD.

## C. Defendants' Obligation to Sue HUD

Centers asserts that, despite owning the chose in action against HUD, he cannot sue the Department directly because, in his view, only those parties in privity with the federal government can sue it for breach of contract. Because the agreement to insure the Miller Beach mortgage was between HUD and Centennial, plaintiff contends that

his rights under the chose in action may be vindicated only through a suit filed by Centennial on his behalf. He argues that the consummation clauses of the stock purchase agreement and the assignment agreement obligate defendants to take this action.

Paragraph 5(e) of the stock purchase agreement states:

> Subject to the terms and conditions herein provided, each of the parties agrees to use their best efforts to do all things necessary, proper or advisable in order to consummate and make effective . . . the transactions contemplated by this Agreement, including, but not limited to, the obtaining of all consents, authorizations, orders and approvals of any governmental commission, board or other regulatory body, . . . and initiating or defending any legal action that is necessary or appropriate to permit such transactions to be consummated. At any time after the Closing Date, if any further action is necessary, proper or advisable to carry out the purposes of this Agreement, then . . . each party to this Agreement shall take, or cause to be taken, such action.

(J.A. 16.) The assignment agreement's consummation clause reads:

> [Centennial] . . . does covenant with Centers . . . that [Centennial] and its legal representatives, successors and assigns will do, execute and deliver, or will cause to be done, executed and delivered, all such further acts, transfers, assignments, conveyances, powers of attorney and assurances, for the better assuring, conveying and confirming unto Centers all and singular of [Centennial's] entire rights, title and interest in and to the Assets.

(*Id.* at 28.)

Plaintiff's argument stretches this language too far. The stock purchase agreement requires that defendants "do all things necessary, proper or advisable in order to consummate and make effective . . . the transactions contemplated by this Agreement." (*Id.* at 16.) It anticipates that these steps might include "initiating . . . any legal action that is necessary or appropriate to permit such transactions to be consummated." (*Id.*) But the contemplated deal was the exchange of Centers's stock for most of Centennial's assets. Plaintiff's complaint alleges that he received those assets, including the chose in action against HUD, pursuant to the assignment agreement. If so, the exchange was completed and no further steps were required. Centers does not ask for a lawsuit that would "permit such transactions to be consummated," but rather a suit that would make the assets he received through those transactions more valuable. The stock purchase agreement does not obligate defendants to file a suit for this purpose.

Moreover, the notion that Centers may force Centennial to sue HUD and that he would control the litigation is at odds with ¶ 5(c) of the agreement, which provides that plaintiff's "only authority on behalf of [Centennial] from and after the Closing will be to handle and resolve the pending lawsuits that are listed on **Exhibit B** hereto." (*Id.* at 15). As discussed, Exhibit B does not list a lawsuit against HUD. Centers fares no better under the assignment agreement, which requires defendants to take "all such further acts . . . for the better assuring, conveying and confirming unto Centers . . . the Assets." (*Id.* at 27.) According to the allegations of the complaint, the agreement itself conveyed the assets to Centers, fulfilling defendants' obligations under this clause.

Centers bases his claims on the terms of the stock purchase agreement and the assignment agreement. His complaint does not allege that any other contract between the parties entitles him to the requested relief. Thus,

we must find support for his claims, if anywhere, in the attached documents. Because they do not obligate defendants to sue HUD, plaintiff's request for a declaration and mandatory injunction to that effect were properly dismissed.

## III. Conclusion

For the reasons stated herein, we REVERSE the district court's dismissal of plaintiff's request for a declaration that the assignment agreement transferred to him a chose in action to sue HUD, and REMAND for proceedings consistent with this opinion. We AFFIRM the remainder of the district court's order.

A true Copy:

       Teste:

                                _____
                                *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*