LaSALLE BANK NAT'L ASSOC

v.

**PARAMONT PROPERTIES et al.**

No. 08 C 2081.

United States District Court, N.D. Illinois.

Nov. 24, 2008.

Mike W. Bartolacci, Thompson Coburn LLP, St. Louis, MO, Scott P. Clair, Todd A. Rowden, Thompson Coburn LLP, Chicago, IL, for LaSalle Bank Nat'l Assoc.

Michael A. Wax, Peter E. Kanaris, Fisher Kanaris, Chicago, IL, Paul J. Puricelli, Stone, Leyton & Gershman PC, St. Louis, MO, for Paramont Properties et al.

AMY J. ST. EVE, District Judge.

### STATEMENT

Plaintiff LaSalle Bank National Association ("LaSalle") sued Paramont Properties, L.L.C. ("Paramont") and Keith Barket (collectively, "Defendants") pursuant to the

Court's diversity jurisdiction for repayment under a Promissory Note and Guaranty. Before the Court is Plaintiff's Motion to Dismiss Defendants' Counterclaims and Plaintiff's Motion to Strike Defendants' Affirmative Defenses. Defendants' counterclaims allege the following state law claims against LaSalle: negligence (Count I), breach of the implied covenant of good faith and fair dealing (Count II), negligent misrepresentation (Count III), and breach of contract (Count IV). (R. 15–1, Countercls.) Defendants also seek declaratory judgment regarding the enforceability of Barket's Guaranty (Count V). (*Id.* at 14.) In addition, Defendants asserted a number of affirmative defenses. LaSalle moved to dismiss the counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted, and to strike each of the affirmative defenses. (R. 22–1, Mot. to Dismiss Defs.' Countercls. & Strike Affirmative Defenses at 2.)

Because Defendants' Counterclaims fail to allege diversity jurisdiction (R. 15–1, Countercls. ¶¶ 1–2), the Court relies on supplemental jurisdiction to decide these Motions regarding Defendants' Counterclaims. *See Leipzig v. AIG Life Ins. Co.,* 362 F.3d 406, 410 (7th Cir.2004) ("[A] compulsory counterclaim does not require an independent grant of jurisdiction. Even a permissive counterclaim, if part of the same case or controversy (a condition met here), may be brought under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), without an independent basis of jurisdiction." (citation omitted)). Defendants must file an amended Answer and Counterclaims, consistent with this opinion, which properly alleges diversity jurisdiction on or before December 15, 2008.

As explained below, Plaintiff's Motion to Dismiss is granted in part and denied in part. The Court grants in part and denies in part Plaintiff's Motion to Strike Defendants' Affirmative Defenses.

## BACKGROUND

Keith Barket is the sole member of Paramont, a real estate development company. (R. 1–1, Compl. ¶¶ 2–3; R. 15–1, Defs.' Answer & Countercls. at 1.) Both Defendants are citizens of Missouri. (R. 1–1 ¶¶ 2–3; R. 15–1 at 1.) LaSalle is a citizen of Illinois because its main office was in Chicago, Illinois.

For purposes of deciding the Motion to Dismiss, the Court accepts Defendants' allegations as true and construes the facts alleged in the parties' pleadings in the light most favorable to Defendants.

In September 2005, LaSalle agreed to establish a line of credit in favor of Paramont with a maximum commitment of $6,500,000 to fund the acquisition of real estate in Jefferson County, Missouri known as Amberleigh Woods (the "Property") and its development into a 224–lot residential subdivision. (R. 15–1, Countercls. ¶¶ 3, 5.) Barket, as Paramont's representative, signed a Promissory Note in favor of LaSalle, whereby LaSalle agreed to loan and Paramont agreed to repay LaSalle the amount of the loan. (R. 1–1, Ex. A.) In his personal capacity, Barket executed a Guaranty in favor of LaSalle promising to repay LaSalle for Paramont's debt evidenced by the Promissory Note. (*Id.,* Ex. D.) In February 2006 and December 2006, the maximum commitment under the Note was increased to $7,000,000 and $8,500,000, respectively. (*Id.,* Exs. B & C; R. 15–1, Answer ¶ 10.) Paramont and LaSalle intended for the development of the Property to be completed in two phases: Phase I involved the development of 119 lots, and Phase II involved the development of 114 lots. (R. 15–1, Countercls. ¶ 3.) The Note provides that "Notwith-

standing anything in this Note to the contrary, no Advance shall be made hereunder for the purpose of improvements to the part of the Land within Phase II until 60 percent (60%) of the lots in Phase I are sold." (R. 1–1, Ex. A ¶ 2.3.) In December 2005, Paramont contracted with Arch Land Development, L.L.C. ("Arch") for Arch to perform the construction work necessary to ready the Property for sale to third-party homebuilders. (R. 15–1, Countercls. ¶ 4.) Arch is managed by Larry Labrier, who is not a party to this suit. (*Id.*)

In relevant part, the Note states:

2.2. *Advances*

(a) ... Each Advance shall be made available to the Borrower by the Lender upon any written, electronic, telecopy or verbal loan request (provided that any verbal loan request is promptly confirmed in writing), which the Lender in good faith believes to emanate from a properly authorized representative of the Borrower, whether or not that is the case.

. . .

(e) At least ten (10) Business Days prior to, and as a condition of, each Advance, Borrower shall furnish to Lender the following documents covering such Advance:

(i) Borrower's disbursement request (a "Request For Advance") in the form of *Exhibit "A"* attached hereto, which shall, among other things ... certify to Lender, as of the date of the applicable request for disbursement, that:

(A) the total amount of each request for disbursement (exclusive of interest) represents the actual amount payable for development work on the Land ...

. . .

(iii) Such other schedules, certificates, documents and other materials as Lender may reasonably request.

(R. 1–1, Ex. A ¶ 2.2.) The Request for Advance form ("Request form") (referred to as "Exhibit A" in the Note) provides that:

The Borrower acknowledges that the approval of this Construction Disbursement by the Lender is subject to all of the terms and conditions precedent for the disbursement of Loan Proceeds, including, without limitation, inspection of the Project, verification of the matters set forth in this Request for Advance and the available [sic] of Loan Proceeds.

(*Id.* at 27.)

According to Defendants, LaSalle engaged U.S. Title to act as LaSalle's escrow agent for purposes of processing Advances under the Note. (R. 15–1, Countercls. ¶ 8.) In January 2006, LaSalle, Paramont, Arch, and U.S. Title executed a Construction Loan Escrow Agreement ("Escrow Agreement"). (R. 15–2, Ex. A to Answer & Countercls.) The Escrow Agreement set out budgets for Phase I and Phase II costs and provided a schedule for disbursing loan proceeds between Phase I and Phase II. The Escrow Agreement also states that "Contractor [Arch] is agent for Owner [Paramont]." (*Id.* ¶ 22.)

LaSalle eventually disbursed the entire amount of the loan proceeds. The loan was issued with a 92% loan-to-value ratio, in violation of the bank's "internal lending guidelines." (R. 15–1, Countercls. ¶ 11(a).) Defendants assert that LaSalle disbursed loan proceeds to Arch/Labrier without requiring Request forms. (*Id.* ¶ 11(e).) Defendants further allege that LaSalle knew about cost overruns, but never alerted Defendants about the problems with the budget. (*Id.* ¶¶ 11(g), 20.) LaSalle never per-

formed any inspections, even though the Request form and Escrow Agreement granted it authority to inspect the progress of construction. (*Id.* ¶ 11(g); R. 15–2 ¶ 20.) LaSalle made advancements for Phase I costs that exceeded the Phase I budget set out in the Escrow Agreement. (R. 15–1, Countercls. ¶ 11(k).) Finally, LaSalle promised to modify the loan a third time to extend additional financing, but later refused to increase the amount of the loan. (*Id.* ¶¶ 13, 16.) According to Defendants, LaSalle administered the loan as it did because it was actively marketing itself for merger and wanted to increase the amount of its loans in order to improve its loan portfolio and its "salability" for prospective merger or acquisition suitors. (*Id.* ¶ 12.)

Paramont defaulted on its payments, and Barket has refused LaSalle's demand for repayment. (R. 1–1 ¶¶ 20–26, 31.) LaSalle is suing Paramont and Barket for repayment of the loan and costs. (R. 1–1.) Defendants' counterclaims allege additional contract claims and tort claims of negligence and negligent misrepresentation against LaSalle. (R. 15–1 at 11, 12–13.)

## MOTION TO DISMISS COUNTERCLAIMS

### I. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not its factual sufficiency. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675–76 (7th Cir.2001). The Court will only grant a motion to dismiss if "it appears beyond doubt that the [complainant] can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir.2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In making its determination, the Court must assume the truth of the facts alleged in the counterclaim, construe allegations liberally, and view them in the light most favorable to the counterclaim plaintiff. *See Centers*, 398 F.3d at 933; *Cozzi Iron & Metal v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir.2001). At the 12(b)(6) stage, the Court considers the exhibits attached to the complaint, but where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls. *Centers*, 398 F.3d at 933. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed.R.Civ.P. 10(c). Here, the relevant "complaint" is Defendants' Counterclaims. The Court does not typically consider documents extrinsic to the challenged pleading in a motion to dismiss. *See* Fed.R.Civ.P. 12(d); *Swanson v. Bank of Am., N.A.*, 566 F.Supp.2d 821, 823 (N.D.Ill.2008). The Seventh Circuit instructs, however, that a "district court may consider extrinsic exhibits if the documents are both referred to in the complaint and are also central to the ... claims." *Swanson*, 566 F.Supp.2d at 823 (citing *Tierney v. Vahle*, 304 F.3d 734, 738–39 (7th Cir.2002)). To be considered at the 12(b)(6) stage, the documents must also be indisputably authentic. *Id.* Those documents attached only to Plaintiff's Complaint are referenced in Defendants' Counterclaims and are central to the claims. The parties do not challenge the authenticity of any of the relevant documents. The Court will accordingly consider them.

### II. Choice of Law

As an initial matter, the Court must determine the applicable law in this case. The Note and Guaranty contain choice of law provisions that identify Illinois as the governing law. A federal court sitting in diversity looks to the forum state

to determine how that state's "conflict of law principles treat choice of law clauses in contracts." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 330 (7th Cir.1987); *see Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir.2000). The Note states that it "is governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the statutes, laws and decisions of the State of Illinois, without regard to its conflict of laws provisions." (R. 1–1, Ex. A ¶ 9.3.) The Guaranty contains a similar provision. (*Id.*, Ex. D ¶ 17.) Illinois courts honor a contractual choice of law clause provided that (1) it does not contravene a fundamental policy of Illinois, and (2) the state chosen bears a reasonable relationship to the parties or the transaction. *Amakua Develop., L.L.C. v. Warner*, 411 F.Supp.2d 941, 948 (N.D.Ill.2006). Since the Note's choice of law clause identifies Illinois law and the parties do not challenge the validity of the clause, the Court will give effect to the choice of law provision.

Defendants do not dispute that Illinois law governs their contract claims, but they contend that Missouri law controls their tort claims of negligence and negligent misrepresentation. (R. 30–1, Defs.' Br. in Opp'n to Pl.'s Mot. to Dismiss at 5, 12.) Defendants argue that the choice of law clauses apply only to contract claims ("[t]his Note [or Guaranty] is governed ... in all [ ] respects" by Illinois law) and that tort claims are governed by Illinois choice of law rules which would direct the Court to apply Missouri law as the state with the most significant contacts to the dispute. (*Id.* at 5.)

■ Illinois choice of law rules dictate that the Court undertake a two-part analysis to determine the breadth of a choice of law clause. *Amakua*, 411 F.Supp.2d at 955;

*M. Block & Sons, Inc. v. IBM Corp.*, No. 04 C 340, 2004 WL 1557631, at *4 (N.D.Ill. July 8, 2004). The first part of the analysis examines the "breadth and language of the contract's choice of law clause to determine if the parties intended it to govern all claims between them." *Amakua*, 411 F.Supp.2d at 955. "Precedent teaches that courts should 'look to whether the language of the provision encompasses all rights and liabilities arising out of the transaction or solely the construction of the contract.'" *Id.* (quoting *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F.Supp.2d 857, 862 (N.D.Ill.2002)).

■■ The second part of the analysis focuses on whether the alleged tort claims are "dependent" on the contract. Regardless of the breadth of the clause and even if intent is absent, "tort claims that are dependent upon the contract are subject to a contract's choice-of-law provisions." *Amakua*, 411 F.Supp.2d at 955; *see Medline*, 230 F.Supp.2d at 862; *M. Block & Sons*, 2004 WL 1557631, at *4. "In deciding whether a tort claim is 'dependent' upon a contract, courts examine whether: (1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract." *Amakua*, 411 F.Supp.2d at 955.

Here, the choice of law clause is relatively restrictive in comparison with more broadly worded provisions which typically encompass all claims "arising out of" or "relating to" the contract. *Id.; Medline*, 230 F.Supp.2d at 863 (contrasting broader "arising out of" language with a clause which provided only that the "agreement shall be subject to English law"). The clause here does not mention claims or disputes. In fact, the Note itself includes such a broadly worded, all-encompassing

provision regarding venue. The Note's choice of venue clause states that "all actions or proceedings in any way arising out of or related to this Note will be litigated in courts having situs in Chicago, Illinois." (R. 1–1, Ex. A ¶ 11.) In contrast, the choice of law clause does not indicate that the parties intended Illinois law to apply to tortious conduct. *See Amakua,* 411 F.Supp.2d at 955–56; *Walker v. Bankers Life & Cas. Co.,* No. 06 C 6906, 2007 WL 967888, at *3–4 (N.D.Ill. Mar. 28, 2007) ("The clause does not mention claims or disputes. Its language contrasts with more broadly stated provisions that apply to all claims 'arising out of' the contract. The choice of venue clause, which immediately follows the choice of law clause, contains broader language: '[v]enue for any action between the parties arising under this contract shall be in a court located in Chicago, Cook County, Illinois'.... The narrower language of the choice of law clause does not reflect a clear intent that all claims, including tort claims, be governed by Illinois law.").

In the second step, the Court considers whether the negligence and negligent misrepresentation claims should be viewed as dependent on the Note and therefore governed by the Note's choice of law clause. *See Amakua,* 411 F.Supp.2d at 956. Defendants allege that LaSalle negligently breached its duty to act as an ordinarily prudent lender by making the loan to Paramont and in permitting disbursements based on flawed budgets and incomplete Requests and despite evidence of cost overruns. (R. 15–1, Countercls. ¶¶ 18–20.) Except for an allegation concerning the bank's internal lending guidelines, Count I alleges negligence in LaSalle's administration of the loan. (*Id.*) For many of the alleged breaches, whether they can sustain a negligence claim depends "on the construction and interpretation of the contract," namely whether what LaSalle did was controlled by the terms of the Note. All of the alleged negligent acts, however, are closely related to the parties' contractual lender-borrower relationship and could not exist without the Note. In the absence of the contract, Defendants could not conceivably claim the benefit of a duty of care in administering the terms of the contract. *Cf. Walker,* 2007 WL 967888, at *5. LaSalle's internal lending rules were presumably intended to govern LaSalle's behavior in entering into and administering loan agreements. In sum, Defendants' negligence count (1) is based on the construction of the Note, (2) is closely related to the parties' contractual relationship, and (3) could not exist without the Note. *See Amakua,* 411 F.Supp.2d at 956. Because Defendants' negligence claim is dependant on the Note, the Note's choice of law clause applies, and the Court will apply Illinois law to Count I.

■ In Count III (negligent misrepresentation), Defendants allege that LaSalle "assured Paramont that [LaSalle] would increase its maximum commitment to cover overruns and some, if not all, of the Phase II costs." (R. 15–1, Countercls. ¶¶ 13, 26.) As explained above, the contractual choice of law provision does not expressly apply to the negligent misrepresentation claim, but the Court will apply the clause nonetheless if the claim is "dependent" on the contract. LaSalle's oral representation that it would modify the Note to increase the amount loaned under the Note is very closely related to the parties' existing contractual relationship embodied in the Note. This tort claim, which concerns a promise to modify the Note, could not exist without the Note. Moreover, as LaSalle points out, the alleged negligent misrepresentation concerns an attempted oral modification of the Note, an act which is explicitly governed by Paragraph 9.4 of the Note. (R. 32–1,

Pl.'s Reply in Supp. of Mot. to Dismiss at 10; R. 1–1, Ex. A ¶ 9.4.) Count III is dependent on the Note and thus is governed by the Illinois choice of law clause. Defendants could reasonably have anticipated that the clause would apply to claims so closely related to the terms of the Note. The Court will apply Illinois law to all of the issues before it.

## III. Analysis

### A. Count I: Negligence

██ To survive a motion to dismiss their negligence claim, Defendants must allege facts which establish that LaSalle owed Defendants a duty of care, that LaSalle breached that duty, and that Defendants incurred injuries proximately caused by the breach. *See Adams v. N. Ill. Gas Co.*, 211 Ill.2d 32, 284 Ill.Dec. 302, 809 N.E.2d 1248, 1257 (2004). Defendants allege that LaSalle owed them a "duty to administer the Paramont loan with the same degree of care, skill and learning that an ordinarily careful lender would use under the same or similar circumstances." (R. 15–1, Countercls. ¶ 18.) According to Defendants, LaSalle breached this duty by: (1) disregarding its internal lending guidelines (*id.* ¶ 11(a)); (2) advancing funds on the basis of flawed and incomplete budgets and without requiring competitive bids (*id.* ¶ 11(c), (d), (f), (i)); (3) disregarding the Note's requirement that advances be made pursuant to a Request for Advance form submitted by Paramont (*id.* ¶ 11(b), (e)); (4) failing to inspect the progress of construction despite knowledge of cost overruns (*id.* ¶ 11(g)); (5) advancing funds on the basis of budgets that conflicted with the allocation of loan proceeds provided in the Escrow Agreement (*id.* ¶ 11(h), (j), (k)); and (6) refusing (until a demand was made) to disburse funds to pay carrying charges for September 2007 as required by the Note (*id.* ¶ 15).

██ The economic-loss, or *Moorman,* doctrine generally prohibits tort claims to recover purely economic loss. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 300 Ill.Dec. 69, 843 N.E.2d 327, 334 (2006). The economic-loss doctrine bars negligence claims based on the failure to perform contractual obligations. *Prime Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 265 Ill.Dec. 722, 773 N.E.2d 84, 94 (Ill.App.Ct. 2002) (summarizing the Illinois economic-loss doctrine which provides that "tort law is not intended to compensate parties for monetary losses suffered as a result of duties which are owed to them simply as a result of a contract" (quoting *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App.3d 18, 241 Ill.Dec. 427, 719 N.E.2d 288 (1999))). The negligent acts alleged above in numbers (2), (3), (4), (5), and (6) are founded on LaSalle's failure to perform terms of the contract in the manner of a reasonably prudent lender. Defendants cannot succeed on those claims because the economic-loss doctrine bars tort recovery for improper performance (i.e., breach) of contract terms. *See, e.g., Prime Leasing*, 265 Ill.Dec. 722, 773 N.E.2d at 94. The duty to administer the terms of the contract in a reasonable way is controlled by the terms of the contract and the obligations, including the duty of good faith and fair dealing, imposed under contract law.

██ Yet, "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion v. Touche Ross & Co.*, 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 514 (1994). In order for Defendants to state a claim for negligence, they must assert that LaSalle owed them

some extracontractual duty. *See, e.g., id.; Ameriquest Mortg. Co. v. Nw. Title & Escrow Corp.*, No. 05 C 7097, 589 F.Supp.2d 987, 992–95, 2008 WL 4594834, at *4–6, 2008 U.S. Dist. LEXIS 81734, at *39–40 (N.D.Ill. Oct. 14, 2008). The only ground Defendants allege in support of their negligence claim which is wholly independent of the Note is that LaSalle breached its duty to act as an ordinarily prudent lender when it disregarded its internal lending guidelines by issuing a loan with a 92% loan-to-value ratio. (R. 15–1, Countercls. ¶ 11(a).)

 Assuming the "ordinarily careful lender" duty constitutes a sufficiently extracontractual duty expected regardless of the contract terms, *see Congregation*, 201 Ill.Dec. 71, 636 N.E.2d at 515 (analyzing the extracontractual duties of an accountant), it must also be a duty recognized by Illinois law.[1] The Court has found no cases applying Illinois law which recognize (or refute) the existence of a general duty of care between lenders and borrowers.[2] Illinois courts have, however, explicitly held that lenders have "no duty to refrain from making a loan if the lender knows or should have known that the borrower cannot repay the loan." *N. Trust Co. v. VIII S. Michigan Associates*, 276 Ill.App.3d 355, 212 Ill.Dec. 750, 657 N.E.2d 1095, 1102 (1995) ("To impose upon the lender a duty of care in preparing an appraisal done solely for the lender's bene-

fit would drastically alter the risk undertaken by the lender."). Illinois courts have held in various other contexts that "[w]here the law does not impose a duty, one will not generally be created by a defendant's rule or internal guidelines. Rather, it is the law which, in the end, must say what is legally required." *Shank v. H.C. Fields*, 373 Ill.App.3d 290, 311 Ill. Dec. 587, 869 N.E.2d 261, 269 (2007) (quoting *Rhodes v. Ill. Cent. Gulf R.R.*, 172 Ill.2d 213, 216 Ill.Dec. 703, 665 N.E.2d 1260, 1272 (1996)). As instructed by the Seventh Circuit, when faced with a novel question of state law and "[i]n the absence of any authority from the relevant state courts, we also shall examine the reasoning of courts in other jurisdictions addressing the same issue and applying their own law for whatever guidance about the probable direction of state law they may provide." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir.2007). California, for example, has explicitly recognized "the general rule that no duty of care is owed by a lender to a borrower." *Ruiz v. Decision One Mortg. Co., L.L.C.*, No. C06–02530, 2006 WL 2067072, at *3 (N.D.Cal. July 25, 2006); *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 283 Cal.Rptr. 53, 56 (Ct.App.1991). Similarly, a Florida court held that a "lender owes no duty to others to supervise the construction and development of projects which it has financed." *Armetta v. Clevetrust Realty Investors*, 359 So.2d 540, 543 (Fla.

---

**1.** Lenders do not owe fiduciary duties to borrowers unless the borrower relies on a special relationship of trust and confidence with the lender. *See Pommier v. Peoples Bank*, 967 F.2d 1115, 1119 (7th Cir.1992); *Choi v. Chase Manhattan Mortg. Co.*, 63 F.Supp.2d 874, 884 (N.D.Ill.1999); *ARH Distribs., Inc. v. ITT Commercial Fin. Corp.*, No. 87 C 511, 1987 WL 17834 (N.D.Ill. Sept. 28, 1987) ("The relationship between a lender and a borrower under a contract is not a fiduciary relationship in which the lender owes a duty of care."). Defendants do not allege that a fidu-

ciary relationship existed between them and LaSalle.

**2.** In deciding whether to recognize a tort duty, Illinois courts consider the following factors: the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the allegedly liable party. *See Choi*, 63 F.Supp.2d at 884 n. 12.

Dist.Ct.App.1978). Massachusetts has also rejected any duty of care that lenders owe borrowers in making a loan or in supervising disbursements under a loan. *In re Fordham*, 130 B.R. 632 (Bankr.D.Mass. 1991). *Clark Motor Co. v. Manufacturers & Traders Trust Co.*, No. 4:07–CV–856, 2007 WL 2155528, at *5, 2007 U.S. Dist. LEXIS 54314, at *13–14 (M.D.Pa. July 26, 2007), which applied Pennsylvania law, is the only case identified by Defendants and found by the Court which recognizes such a general duty. This Court is not persuaded by that case, which cited no precedent and provided no reasoning in support of its conclusion. It is revealing, however, that Pennsylvania courts have explicitly found that "[c]ourts have refused to find a general duty of care between a lender and a guarantor." *Berry v. First Nat'l Bank of Mercer County*, 892 F.Supp. 127, 128 (W.D.Pa.1994).

In light of those cases disclaiming lender-borrower duties and the Seventh Circuit's direction that district courts sitting in diversity should not create new state law that expands liability, *see Pisciotta*, 499 F.3d at 635–36, the Court grants Plaintiff's Motion to Dismiss Count I for failure to state a claim for which relief can be granted. The Court finds that Illinois does not, and would not, recognize a general duty of care owed by lenders to borrowers, especially not one that would create tort liability based on internal lending guidelines.[3]

## B. Count II: Good Faith and Fair Dealing

Defendants claim in Count II that LaSalle breached its duty of good faith and fair dealing in administering the Note and Guaranty. As Defendants acknowledge, the Illinois choice of law clause applies to Count II. (R. 30–1 at 7.) Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. *See, e.g., Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir.2000); *Voyles v. Sandia Mortg. Corp.*, 196 Ill.2d 288, 256 Ill.Dec. 289, 751 N.E.2d 1126, 1130–31 (2001). Because breach of the duty of good faith and fair dealing is not an independent cause of action but is merely a basis for a breach of contract action, the Court grants Plaintiff's Motion to Dismiss Count II. As a basis for a breach of contract claim, the Court analyzes the duty of good faith and fair dealing with Count IV (breach of contract) below.

## C. Count III: Negligent Misrepresentation

In Count III, Defendants allege that LaSalle negligently misrepresented that it would extend additional funds to Paramont beyond the maximum commitment under the Note to cover cost overruns and some Phase II costs. (R. 15–1, Countercls. ¶ 26.) LaSalle argues that, even if Defendants sufficiently alleged the elements of negligent misrepresentation in Count III, the claim is barred by the Illinois Credit Agreements Act (the "ICAA"), 815 ILCS 160/0.01 *et seq.* (West 2008). (R. 23–1, Br. in Supp. of Mot. to Dismiss at 10.) Under the ICAA, "[a] debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing ... and is signed

---

**3.** The Court does not here decide whether the waiver of defenses and counterclaims clauses contained in the Note and Guaranty (R. 1–1, Ex. A ¶ 13, Ex. D ¶ 21) would also bar the negligence claim because the parties did not raise this issue in their briefs. Furthermore, regardless of their application, they would not impact the outcome of the motion to dismiss the negligence claim.

by the creditor and debtor." 815 ILCS 160/2; *McAloon v. Nw. Bancorp, Inc.*, 274 Ill.App.3d 758, 211 Ill.Dec. 281, 654 N.E.2d 1091, 1094 (Ill.App.Ct.1995) ("The language bars all actions by a debtor based on or related to an oral credit agreement."). This bar applies equally to oral agreements to "extend credit or delay or forbear repayment of money." 815 ILCS 160/1(1). Defendants respond that their negligent misrepresentation claim is not barred because it arises out of conduct covered under the enforceable written agreement. (R. 30–1 at 13 n. 3.) *General Electric Corp. v. Donogh Homes, Inc.*, No. 93 C 5614, 1993 WL 524814, at \*2–3 (N.D.Ill. Dec. 15, 1993) rejected this precise argument. The court in that case found that all of the borrower-defendants' counterclaims, including one for negligent misrepresentation, were barred by the ICAA because they were based on the lender's failure to perform an oral promise to modify and extend existing loans. *Id.* at \*2. Simply put, all claims related to an oral promise to modify or extend a loan are barred by the ICAA. *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 225 (7th Cir.1996); *McAloon*, 211 Ill.Dec. 281, 654 N.E.2d at 1095. Thus, the negligent misrepresentation claim is barred, and LaSalle's Motion to Dismiss Count III is granted. Count III is dismissed with prejudice.

### D. Breach of Contract
#### 1. Count IV: Breach of the Note's Express Terms

As required by the choice of law clause, Illinois law governs whether Defendants can recover for breach of contract. In Count IV, Defendants allege that LaSalle breached its obligations under the Note by (1) failing to require properly executed Requests for Advances as a condition to construction draws; (2) failing to make inspections of the progress of construction; (3) allowing construction draws without the written approval of Paramont; and (4) refusing to allow additional draws to cover cost overruns and Phase II costs. (R. 15–1, Countercls. ¶ 31.)

The relevant conditions precedent to LaSalle's disbursement of loan proceeds were the receipt of a written request which LaSalle in good faith believed came from an authorized representative of Paramont, the receipt of a Request form certifying that the amount requested was for amounts payable for development, verification of the matters in the Request, and inspection of the property. (R. 1–1, Ex. A.) The parties disagree, however, on their particular understandings of the final three conditions precedent. Defendants assert that LaSalle's receipt and verification of a properly executed Request form and an inspection of construction were necessary preconditions to loan disbursements. (R. 30–1 at 9–10.) LaSalle responds that the Note permitted LaSalle to require Requests, verify their accuracy, and perform inspections before disbursing funds, but did not require it to do so. (R. 23–1 at 12.) LaSalle maintains that, because those provisions were solely for its own benefit, it was free to waive them at any time. (*Id.*) The law is clear that a party to a contract is free to waive conditions precedent which are solely for its benefit. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir.2004); *Lempera v. Karner*, 79 Ill.App.3d 221, 34 Ill.Dec. 549, 398 N.E.2d 224, 225 (Ill.App.Ct.1979); *Home Sav. Ass'n of Kansas City, F.A. v. State Bank of Woodstock*, 763 F.Supp. 292, 300 (N.D.Ill.1991). Whether a condition is for the benefit of one or both parties is a factual issue. 13 R. Lord, Williston on Contracts § 39:24 (4th ed. 2007); *see Fox v. Stewart*, 91 Ill.App.3d 201, 46 Ill.Dec. 828, 414 N.E.2d 881, 884 (Ill.App.Ct.1980); *Marin v. Prellberg*, No. 85 C 1588, 1986

WL 1866, at *3 (N.D.Ill. Jan. 23, 1986); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 235 F.3d 1184, 1191–92 (9th Cir.2000).

Defendants assert that LaSalle breached the terms of the Note by disbursing funds without requiring properly executed Request forms. The Note states that "as a condition of [ ] each Advance, Borrower shall furnish to Lender ... a Request For Advance." According to Defendants, LaSalle never required a Request for Advance. (R. 15–1, Countercls. ¶ 11(e).) Unless this provision was included solely for LaSalle's benefit and thus could be waived by LaSalle, this states a claim for breach of contract. On its face, this provision is written as a mandatory precondition ("shall"), not as a permissive option that LaSalle could choose to pursue. *See Pimental v. Wachovia Mortg. Corp.,* 411 F.Supp.2d 32, 36 (D.Mass.2006). The Note does not contain a clause declaring that this, or any, provision was included for the sole benefit of the lender. Its absence is noteworthy because loan agreements often contain clauses which provide, for example, that "[a]ll conditions of the obligations of Lender to make advances hereunder are imposed solely and exclusively for the benefit of Lender and may be freely waived or modified in whole or in part by Lender at any time...." *In re Fordham,* 130 B.R. at 640; *see Ferrone v. Onorato,* 298 Fed.Appx. 138, 140 n. 2, 2008 WL 4763263, at *1 n. 2 (3d Cir.2008); *Plaza W. Assocs. v. Allied Bancshares, Inc.,* No. 85 C 1941, 1985 WL 3013, at *4 (N.D.Ill. Oct. 1, 1985); *Alpine Bank v. Hubbell,* 506 F.Supp.2d 388, 402 (D.Colo. 2007) (explaining that even though lender had discretion to withhold disbursements if certain conditions precedent, including inspection and plan specification approvals, were not met, the loan agreement provided that those conditions precedent "are acknowledged to be solely for the protection of Lender's interest, and under no circumstances shall they be construed to impose any responsibility or liability of any nature whatsoever on Lender to any party"). Nothing in the Note or the Request form mandates finding that the term requiring Request forms was intended to benefit only LaSalle. In addition, the parties agreed that draw requests could be made by Paramont's representatives, so Paramont may have expected that Request forms would act as a check on the propriety of disbursements. At this stage, the Court accepts Defendants' assertion that those terms were included for their benefit as well as LaSalle's because that assertion is not controverted by the written documents in the record. *See, e.g., N. Ind. Gun & Outdoor Shows v. City of South Bend,* 163 F.3d 449, 454 (7th Cir.1998); *Fox,* 46 Ill.Dec. 828, 414 N.E.2d at 884 ("Although it is possible that the contingencies in the contract were inserted solely for the benefit of the purchaser and could be waived by him, there still remains a question of fact both as to the purpose of the conditions in the contract and whether they were waived by the purchaser."). LaSalle has not pointed to any cases, and the Court has found none, holding that a term requiring a Request for Advance is, as a matter of law, solely for the benefit of the lender. Defendants have stated a claim for breach of contract based on LaSalle's failure to require Request forms.

██ Defendants' second allegation in support of their breach of contract claim is that LaSalle failed to inspect the progress of construction before disbursing funds. (R. 15–1, Countercls. ¶ 31.) LaSalle again responds that the alleged condition precedent requiring inspections was solely for LaSalle's benefit. (R. 23–1 at 12.) In contrast to the Request for Advance provision discussed above, the Note itself does not refer to inspections. Rather, the Re-

quest form attached to the Note provides that "approval of this Construction Disbursement by the Lender is subject to all of the terms and conditions precedent for the disbursement of loan proceeds, including, without limitation, inspection of the Project, verification of the matters set forth in this Request for Advance and the available [sic] of Loan Proceeds." (R. 1–1, Ex. A at 27.) This language is somewhat permissive because it simply lists inspections as one of a number of things LaSalle can require before disbursing funds. It does not clearly indicate that LaSalle must perform an inspection before disbursing funds or that LaSalle promises to perform an inspection when it learns of cost overruns. Even so, the Court cannot conclude that the inspection provision was included solely for LaSalle's benefit. Unlike many contracts, nothing in either the Note or Request form clearly resolves whether inspections were to benefit one or both parties or who could rely on the inspections. *See, e.g., Factory Mut. Ins. Co. v. Bobst Group USA, Inc.,* 392 F.3d 922, 923 (7th Cir.2004) (contract stated that inspections were only for one party's benefit); *Alpine Bank,* 506 F.Supp.2d at 402. In fact, the parties' own Escrow Agreement stated that "Escrowee has the right but not the obligation, and solely for its own protection to make such inspections, as it deems advisable. Lender, Owner, and Contractor especially acknowledge that they do not and shall not rely upon any inspections, which Escrowee may make pursuant hereto." (R. 15–2 ¶ 23.) If inspections were a mandatory condition precedent included for the benefit of both parties, as Defendants allege, LaSalle could not unilaterally waive their occurrence. Defendants may be able to prove a set of facts which would establish that LaSalle breached the Note by failing to perform inspections.

Thirdly, under the Note, LaSalle could only disburse funds upon the receipt of a written request which LaSalle in good faith believed to come from Paramont or its authorized representative. (R. 1–1, Ex. A ¶ 2.2(a).) Defendants' allegation that LaSalle breached the contract by making disbursements without the written approval of Paramont cannot sustain a breach of contract claim. The Note expressly permits LaSalle to disburse loan proceeds on the basis of draw requests made by Paramont's authorized representatives. (*Id.*) Defendants admit that LaSalle made disbursements at the request of Labrier and other agents of Arch. (R. 15–1, Countercls. ¶ 11(b).) According to the Escrow Agreement, "Contractor [Arch] is agent for Owner [Paramont]." (R. 15–2 ¶ 22.) Defendants do not allege that any disbursements were made to or at the request of an unauthorized agent or that those who made requests were at any time Paramont's unauthorized representatives. Even accepting the facts alleged by Defendants and making all reasonable inferences from them in their favor, Defendants have failed to state a claim for breach of contract on the ground that LaSalle made advances without Paramont's written approval. Accordingly, the Court dismisses this aspect of Defendants' breach of contract claim without prejudice.

Defendants' final basis for their breach of contract claim is that LaSalle breached the Note by "refusing to allow additional draws to cover cost overruns and Phase II costs." (R. 15–1, Countercls. ¶ 31.) This assertion fails to state a breach of contract claim because no provision, express or implied, of the Note or its modifications required LaSalle to extend additional financing beyond the Note's maximum commitment. To the extent Defendants allege a breach of contract claim based on LaSalle's oral promise to extend

additional credit, that claim also fails. As explained above, any promise to modify the amount of the loan is unenforceable unless written and signed by both parties. 815 ILCS 160/2. Under the ICAA, no legal action, including a breach of contract claim, is cognizable on such an unenforceable oral promise. *See Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat'l Bank,* 295 Ill.App.3d 61, 229 Ill.Dec. 408, 691 N.E.2d 881, 888 (Ill.App.Ct.1998); *Donogh Homes,* 1993 WL 524814, at *3.[4] The Court dismisses this aspect of Defendants' breach of contract claim with prejudice.

## 2. Count II: Implied Duty of Good Faith and Fair Dealing

In Count II, Defendants allege that LaSalle acted in bad faith and in a manner inconsistent with their reasonable expectations in administering the loan. (R. 30–1 at 9.) In support of this claim, they point to the same set of acts alleged in support of their negligence claim. (R. 15–1, Countercls. ¶ 23.) The duty of good faith and fair dealing is implied in every contract, including the Note, its modifications, and the Guaranty. *LaSalle Bus. Credit, Inc. v. Lapides,* No. 00 C 8145, 2003 WL 722237, at * 15 (N.D.Ill. Mar. 3, 2003). To establish a breach of the duty of good faith and fair dealing, the complaining party must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties. *Ber-*

*aha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1443–45 (7th Cir.1992); *Gore v. Indiana Ins. Co.,* 376 Ill.App.3d 282, 315 Ill.Dec. 156, 876 N.E.2d 156, 161–62 (Ill. App.Ct.2007) ("Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." (citations omitted)). "However, the 'obligation of good faith that exists in every contractual relation' is 'not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document.' Rather 'good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting." *Lapides,* 2003 WL 722237, at *15 (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357 (7th Cir.1990)). "Illinois law holds that parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of the contract." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo,* 349 F.3d 376, 395–96 (7th Cir.2003).

Defendants propose numerous examples of how LaSalle abused its discre-

---

4. While not raised in their Counterclaims, Defendants allege in their Response brief that LaSalle breached the term of the Note which provided that LaSalle would not make disbursements for Phase II costs until 60% of the Phase I lots had been sold. (R. 1–1, Ex. A ¶ 2.3.) To have violated this provision, LaSalle must have made disbursements for Phase II costs. Defendants' allegations make clear that LaSalle never disbursed funds for Phase II costs. (R. 15–1, Countercls. ¶ 16.) Defendants allege only that LaSalle permitted draws for Phase I costs in excess of the Phase I budget, which was set out in the Escrow Agreement. (R. 30–1 at 10.) Therefore, the Phase II disbursement limitation was never invoked.

tion and breached its duty of good faith and fair dealing. (R. 15–1, Countercls. ¶¶ 11–15.) Because the duty of good faith and fair dealing is merely a tool to aid in interpreting contract terms, the Court restricts the following analysis to those facially viable allegations which relate to explicit contract terms. First, the Note provided that LaSalle could require, as a condition of each advance, "[s]uch other schedules, certificates, documents and other materials as Lender may reasonably request." (R. 1–1, Ex. A ¶ 2.2(e)(iii).) Defendants argue that LaSalle abused its discretion by never requiring additional documentation. (R. 30–1 at 8.) Next, the Request form permitted LaSalle to conduct inspections and verify the information provided in the Request form before making advances. Defendants allege that LaSalle misused its discretion by not conducting inspections or verifying the matters included in the Request form. (*Id.*) In addition, they allege that LaSalle misused the discretion it necessarily had to discontinue or limit disbursements for Phase I costs that exceeded the Phase I budget set out in the Escrow Agreement. (*Id.*)

Defendants assert that LaSalle's decision to not perform any of the discretionary acts was made in bad faith. (R. 15–1, Countercls. ¶ 12.) According to Defendants, LaSalle administered the loan and disbursed funds as it did in order to make itself more attractive to potential merger partners. (*Id.*) LaSalle had unlimited discretion in deciding whether to perform any of these acts. The contract terms, for example, do not limit or control when or whether to conduct an inspection or discontinue disbursements. LaSalle had unfettered discretion to decide whether to require additional documentation (although if it chose to request additional support, it was required to do so reasonably). "The extreme breadth of this discretion imposes

a similar breadth upon 'the reasonable expectations of the parties' and concomitantly reduces the scope of judicial review in this regard virtually to zero." *Roan v. Keck, Mahin & Cate*, No. 91–2637, 1992 WL 104789, at *6, 1992 U.S.App. LEXIS 12030, at *15 (7th Cir. May 18, 1992). Still, Defendants assert that LaSalle's failure to do these things despite knowledge of budget overruns was contrary to their reasonable expectations. (R. 30–1 at 11.) What LaSalle did and did not require and what it relied on prior to making disbursements are issues upon which the Court will not speculate in the absence of a factual record. Defendants may be able to prove a set of facts in support of their breach of contract claim that establishes that LaSalle's administration of the loan was contrary to their reasonable expectations.

According to Defendants, LaSalle never required a single Request form. (R. 30–1 at 10.) "Illinois courts use the covenant [of good faith and fair dealing] to determine the intent of the parties where a contract is susceptible to two conflicting constructions." *Cromeens*, 349 F.3d at 395. Here, the Note does not make clear whether LaSalle had an unfettered right to require or not to require Request forms or whether the term was a mandatory condition precedent for the benefit of both parties. If requiring Request forms was a matter within LaSalle's discretion, rather than an unfettered right or an unwaivable, mandatory precondition, then LaSalle was required to exercise its discretion in accordance with Defendants' reasonable expectations. The Court cannot say that LaSalle did not breach the duty of good faith and fair dealing with respect to the provision requiring Requests. The degree of oversight (via inspections and verification of the matters in the Requests) to exercise was a matter wholly within LaSalle's discretion. According to Defendants, LaSalle

never required a Request form before making disbursements and performed none of the oversight that Defendants reasonably expected because it was trying to position itself as an attractive merger partner. In light of these allegations, the Court concludes that Defendants can succeed on a breach of contract claim founded on LaSalle's failure to administer discretionary contract terms in good faith.

Finally, the Note contains a ratification clause which states that "Borrower does hereby irrevocably confirm, ratify and approve all such Advances by the Lender." (R. 1–1, Ex. A ¶ 2.2(a).) The Court could find no cases directly addressing such a ratification clause. The Court, however, must give effect to clear contract terms. *See, e.g., Jackim v. CC–Lake, Inc.,* 363 Ill.App.3d 759, 299 Ill.Dec. 761, 842 N.E.2d 1113, 1119 (Ill.App.Ct. 2005). This clause may act as a bar to some or all of the breach of contract claims. The Court declines to decide the clause's effect at this stage. Even if Defendants waived any right to challenge the propriety of disbursements, the duty of good faith and fair dealing can only be waived expressly. *Chem. Bank v. Paul,* 244 Ill.App.3d 772, 185 Ill.Dec. 302, 614 N.E.2d 436, 441–42 (Ill.App.Ct.1993); *Lapides,* 2003 WL 722237, at *14. It was not waived expressly in the Note or the Guaranty. (R. 1–1, Ex. A ¶ 13 & Ex. D ¶ 20.) Because the Court finds that Defendants have pled facts sufficient to prove a claim for breach of the implied duty of good faith, Defendants' breach of contract claim, which includes allegations based on breach of the implied duty of good faith and fair dealing, cannot be dismissed in

whole. Plaintiff's Motion to Dismiss Count IV is granted in part. The Court dismisses with prejudice Defendants' breach of contract claim based on LaSalle's making disbursements without Paramont's written permission and based on LaSalle's refusal to extend additional credit. The Court also denies Plaintiff's Motion to Dismiss Count IV in part. Defendants' breach of contract claim states a cause of action for which relief may be granted to the extent it is based on LaSalle's failure to require Request forms, failure to perform inspections, and failure to act in good faith in performing allegedly discretionary contract terms.

### E. Count V: Declaratory Judgment

In Count V, Defendant Barket asks the Court to declare that he properly revoked the Guaranty. (R. 15–1, Countercls. ¶¶ 33–34.) "A continuing guaranty may be revoked at any time, provided due notice is given. Once a guaranty has been revoked, the guarantor's liability is limited to transactions occurring under the guaranty before notice of revocation." *Phelps Dodge Corp. v. Schumacher Elec. Corp.,* 2004 WL 443992, at *4, 2004 U.S. Dist. LEXIS 3724, at *13 (N.D.Ill. Mar. 9, 2004) (citing *City Nat'l Bank v. Reiman,* 236 Ill.App.3d 1080, 175 Ill.Dec. 919, 601 N.E.2d 316, 322 (Ill.App.Ct.1992)). Defendants allege that Barket effectively revoked the Guaranty in a letter sent to LaSalle, which was not provided to the Court. (R. 15–1, Countercls. ¶¶ 15, 34.) Defendants have sufficiently pled a basis for finding that the Guaranty was revoked. The Court denies Plaintiff's motion to dismiss Count V.[5]

---

5. The Court notes that the Guaranty contains a waiver of defenses clause. (R. 1–1, Ex. D ¶ 20.) The parties, however, did not address this clause anywhere in their briefs. As a result, the Court does not address it at this stage, except to note that the clause did not waive the implied covenant of good faith and fair dealing. *See Chem. Bank,* 185 Ill.Dec. 302, 614 N.E.2d at 441–42.

## MOTION TO STRIKE AFFIRMATIVE DEFENSES

### I. Legal Standard

 Federal Rule of Civil Procedure 12(f) governs motions to strike affirmative defenses. Pursuant to that Rule, the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Generally, motions to strike are disfavored because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989). Yet when a motion to strike will "remove unnecessary clutter from the case, [motions to strike] serve to expedite, not delay." *Id.* "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Id.* Even under the liberal notice pleading standards of the Federal Rules, an affirmative defense must include direct or inferential allegations as to all elements of the defense asserted. *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F.Supp.2d 897, 904 (N.D.Ill.2006).

 The Court applies a three-part test for examining the sufficiency of an affirmative defense. *Surface Shields, Inc. v. Poly–Tak Prot. Sys., Inc.*, 213 F.R.D. 307, 308 (N.D.Ill.2003). First, the Court determines whether the matter pled actually constitutes an affirmative defense. *Id.* Second, the Court considers whether the defense is adequately pled under the pleading standards of Federal Rules of Civil Procedure 8 and 9. *Id.* Third, the Court evaluates the sufficiency of the defense pursuant to a standard identical to Rule 12(b)(6). *Id.* "Before granting a motion to strike an affirmative defense, the Court must be convinced that there are no unresolved questions of fact, that any questions of law are clear, and that under no set of circumstances could the defense succeed." *Reis*, 462 F.Supp.2d at 905. In a case premised on diversity jurisdiction, the legal and factual sufficiency of the affirmative defenses is examined with reference to state law. *Id.*

### II. Analysis

 Although Plaintiff seeks to "strike each of Defendants' affirmative defenses," (R. 22–1 at 2), Plaintiff's supporting briefs only directly address four of Defendants' affirmative defenses.

 Defendants' first affirmative defense asserts: "Plaintiff's Complaint fails to state a claim upon which relief can be granted." (R. 15–1, Answer at 4.) LaSalle argues that it has adequately pled its claims against Defendants. (R. 22–1 at 2.) Although "failure to state a claim" may not meet the technical definition of an affirmative defense because it does not raise any matter outside of Plaintiff's complaint, Form 30 (previously Form 20, in slightly different form) of the Federal Rules of Civil Procedure's Appendix of Forms lists this defense as a model defense. *See Reis*, 462 F.Supp.2d at 905. Moreover, Rule 84 specifically authorizes the use of the model defenses contained in the form. *Id.* In light of Rule 84 and Form 30, the Court concludes that the defense of "failure to state a claim" can be raised as an affirmative defense, even though it is not among the Rule 8(c)'s enumerated affirmative defenses. *See id.; Rao v. Covansys Corp.*, No. 06 C 5451, 2007 WL 141892, at *2, 2007 U.S. Dist. LEXIS 3267, at *5–6 (N.D.Ill. Jan. 17, 2007). While the affirmative defense of "failure to state a claim" is proper, Defendants have failed to adequately plead this defense in accordance with Rule 8. They have not provided any of the minimal specifics required by Rule 8 to provide LaSalle any notice as to how and in what portion of the complaint LaSalle has failed to state a claim upon which

relief may be granted. *See Reis,* 462 F.Supp.2d at 905 (striking affirmative defense of failure to state a claim that did not incorporate by reference any allegations of the counterclaims or indicate which of the counterclaim allegations supported the defense); *Renalds v. S.R.G. Rest. Group,* 119 F.Supp.2d 800, 803–04 (N.D.Ill.2000) (striking failure to state a claim defense because it did not identify specific infirmities in the complaint). Although Defendants' Counterclaims contain many factual allegations, Defendants' Answer does not indicate which of those allegations are intended to support its failure to state a claim defense. *See Reis,* 462 F.Supp.2d at 906; *Codest Eng'g v. Hyatt Int'l Corp.,* 954 F.Supp. 1224, 1231 (N.D.Ill.1996); *Lapides,* 2003 WL 722237, at *14 (striking defendant's failure to state a claim defense as a "bare bones, conclusory allegation" and as patently without merit because defendant did not dispute the existence of the debt evidenced by the loan agreement, the default, nor his guaranty). Therefore, Defendants' first affirmative defense is stricken without prejudice.

■■■■ Defendants' third affirmative defense asserts: "Plaintiff failed to mitigate its damages as set forth in Defendants' Counterclaims." (R. 15–1, Answer at 5.) LaSalle responds that this affirmative defense does not satisfy the plausibility requirement in Rule 8. (R. 22–1 at 2.) "First, failure to mitigate damages is an affirmative defense under Illinois law." *Rao,* 2007 WL 141892, at *2, 2007 U.S. Dist. LEXIS 3267, at *7. The Court finds that Defendants have pled the affirmative defense of failure to mitigate damages with adequate specificity. *See, e.g., id.* at *2–3, 2007 U.S. Dist. LEXIS 3267, at *8–9; *Fleet Bus. Credit Corp. v. Nat'l City Leasing Corp.,* 191 F.R.D. 568, 570 (N.D.Ill. 1999) (holding that "in cases where discovery has barely begun, the failure to mitigate defense is sufficiently pled without additional facts"). Therefore, Plaintiff's

Motion to Strike Defendants' affirmative defense of failure to mitigate damages is denied.

■■■■ Defendants' fifth affirmative defense states: "Plaintiff's Complaint is barred by LaSalle's breach of its obligations under the contract and breach of its implied duty of good faith and fair dealing as set forth in Defendants' Counterclaims." (R. 15–1, Answer at 5.) Breach of contract is properly pled as an affirmative defense. *Carroll v. Acme–Cleveland Corp.,* 955 F.2d 1107, 1115 (7th Cir.1992). The breach of contract defense repeats the allegations contained in Counts II and IV of Defendants' Counterclaims. Defendants have fulfilled Rule 8's minimal pleading requirements because they incorporated by reference the facts alleged in the Counterclaims. As discussed above, the breach of contract claims are not entirely without merit, thus the Court will not strike this affirmative defense.

■■■■ Finally, Plaintiff moves to strike Defendants' sixth affirmative defense which asserts: "Defendant Keith Barket's Guaranty is not enforceable for the reasons set forth in Defendants' Counterclaims." (R. 15–1, Answer at 5.) Unenforceability of the Guaranty is a proper affirmative defense, *see, e.g., Pace Commc'ns, Inc. v. Moonlight Design, Inc.,* 31 F.3d 587, 594 (7th Cir.1994), and was adequately pled because it incorporated the facts alleged in the Counterclaims. LaSalle challenges this defense by arguing that it is legally and factually deficient, the same basis that it challenges Count V. Given that the Court is not dismissing Count V, there is no basis to strike this affirmative defense.

The Court strikes without prejudice Defendant's first affirmative defense of failure to state a claim. Plaintiff's Motion to Strike Defendants' Affirmative Defense is otherwise denied.

## CONCLUSION

For the reasons stated above, the Court dismisses Count II, Count III, and Count IV in part with prejudice and dismisses Count I and Count IV in part without prejudice. The Court denies Plaintiff's Motion to Dismiss Count IV in part and Count V. The Court strikes Defendants' first affirmative defense of failure to state a claim without prejudice. Defendants have leave to replead their first affirmative defense in their amended Answer and Counterclaims to be filed on or before December 15, 2008.